MICHAEL MILLER & another[1] *vs.* BOSTON AND
MAINE CORPORATION.

Middlesex.   October 11, 1979. – December 3, 1979.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Practice, Civil,* Directed verdict, Instructions to jury, Objection. *Evidence,* Relevancy and materiality. *Negligence,* Railroad: person on track, child.

In an action by a minor plaintiff to recover for injuries sustained when he was struck by a railroad car at a crossing, there was sufficient evidence to warrant findings that the plaintiff was a licensee rather than a trespasser and either that the engineer had failed to maintain a proper lookout at the crossing or that the defendant had failed to trim back the bushes which obstructed the view of the engineer as his train approached the crossing. [772]

In a civil action, the defendant's general objection to the judge's failure to give any of its requested instructions was insufficient to preserve the issue for appeal. [773-774]

TORT.   Writ in the Superior Court dated August 6, 1973.

The case was tried before *Irwin,* J.

The case was submitted on briefs.

*Francis J. Bousquet & Neil L. Lynch* for the defendant.

*Albert P. Zabin & Jeffrey S. Lambert* for the plaintiffs.

HALE, C.J.  The defendant Boston and Maine Corporation (B & M) appeals from a judgment entered on jury verdicts that were rendered for the plaintiffs in the Superior Court on February 1, 1978.  B & M claims that the trial judge erred (1) in not directing a verdict in its favor, (2) in not giving any of the jury instructions that it requested, and (3) in admitting certain evidence.  We find no error.

---

[1] Mary Jeanette Miller, his mother and next friend.

On the basis of the evidence viewed most favorably to the plaintiffs it appears that between 6:00 and 7:00 P.M. on May 8, 1973, the minor plaintiff, then twelve years old, was struck by a self-propelled passenger railroad car operated by B & M. A dirt road led from the street on which the minor plaintiff's family lived, across B & M's railroad track (which lies approximately 130 feet from that street), and into a large conservation area owned by the town of Lexington (the Great Meadow). This dirt road, one of several paths or roads into the Meadow, was used by an uncertain but significant number of motor-cyclists, horse riders, and nature lovers to reach the conservation area. The Lexington fire department used this road, among others, to get to the Meadow to fight the brush fires that occurred there as often as five times a week. The department occasionally cleared branches from the road. On the day of the accident a person standing within ten feet of the track could see only a short distance down the track in the direction of Boston. There was a faded crossing sign where the dirt road met the tracks. Planks had been laid between the rails.

B & M was aware of the crossing; it was marked on B & M's maps as a farm crossing. The engineer would sound his horn at Bow Street in East Lexington, approx-imately one mile before the crossing, and would also sound it near an elementary school four or five houses before the crossing.

The engineer who was operating the railroad car when the accident occurred had seen the minor plaintiff on his minibike on a number of other occasions. The minor plaintiff would sometimes wait for the train, pass it on his minibike, wait for it beyond the crossing, and wave to it as it passed. On the day of the accident, the plaintiff approached the track from the side opposite the Meadow. He stopped just short of the track, looked both ways, and listened for a whistle. At that point his view was obstructed by brush. He moved his minibike forward, saw the railroad car, and turned to the left to

avoid it, but was struck on his right side, causing severe damage to his right leg.

1. B & M argues that the evidence did not permit a finding that it violated any duty owed to the minor plaintiff. The standard that we must apply is whether the evidence, viewed most favorably to the plaintiffs, is sufficient to support a verdict in their favor. *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). Stated otherwise, the question is whether "anywhere in the evidence . . . any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Ibid.*, quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972).

The evidence warranted a finding that the minor plaintiff was a licensee rather than a trespasser as contended by the defendant. *Canty* v. *New York, New Haven & Hartford R.R.* 337 Mass. 38 (1958).[1] That the crossing appeared on B & M's maps, that it was marked with a crossing sign and laid with planks, the frequency of its use (in which the railroad may reasonably be seen to have, at the very least, passively acquiesced), and B & M's knowledge that the adjoining areas were often used all combine to warrant the conclusion that the plaintiff was more than a trespasser. Thus, B & M's duty to the plaintiff could have been found to require "reasonable care in all the circumstances," and not just the avoidance of reckless behavior. *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1973). *Bouchard* v. *DeGagne*, 368 Mass. 45 (1975).

The evidence permitted the jury to find that (a) the engineer had failed to maintain a proper lookout at the crossing or (b) that the defendant had failed to trim back the bushes which obstructed the view of the engineer as his train approached the crossing so that the engineer should have sounded his horn or other noise-making device as he approached the crossing. A finding of either (a) or (b) would have warranted the jury's general finding of negligence.

---

[1] As to child trespassers see *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177 (1979).

2. The defendant asserts that the judge erred in not granting its requests for jury instructions and in not informing counsel of his proposed action on those requests. Jury instructions are governed by Mass.R.Civ. P. 51, 365 Mass. 816 (1974), which tracks Fed.R.Civ.P. 51. See *Rollins Environmental Services, Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975). According to rule 51(b): "The court shall inform counsel of its proposed action upon the requests [for jury instructions] prior to their arguments to the jury . . . . No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

B & M's counsel made only a general objection to the court's not giving his requested instructions: "Your Honor, I have, you know, filed requests for instructions numbering fifteen in total and I submit none of them have been given, and I object to the Court's failure to give all of them." Such an objection cannot be sufficient if rule 51 is to serve its purpose. *Narkin* v. *Springfield,* 5 Mass. App. Ct. 489, 491 (1977).

In order to preserve for appeal a question of refused jury instructions, counsel must state the grounds for his objections; he cannot assume that those grounds are apparent, either from the objection itself or from prior conversation with the court. See e.g., *Ezekiel* v. *Jones Motor Co.,* 374 Mass. 382, 393 (1978); *Marshall* v. *Nugent,* 222 F.2d 604, 615 (1st Cir. 1955) (merely numbering the instructions requested but not given is insufficient to preserve the question for appeal); *Sears* v. *Southern Pac. Co.,* 313 F.2d 498 (9th Cir. 1963); *C. A. Wright, Inc.* v. *F. D. Rich Co.,* 354 F.2d 710, 713 (1st Cir.), cert. denied, 384 U.S. 960 (1966) (reciting the numbers of instructions requested, but not given, provides no practical assistance to trial court and is inadequate under rule 51); *United States* v. *Lachmann,* 469 F.2d 1043 (1st Cir. 1972), cert. denied, 411 U.S. 931

(1973). Cf. *Palmer* v. *Hoffman,* 318 U.S. 109, 119 (1943). "Fairness, the candor which counsel owes to the court, and the duty to avoid unnecessary new trials, desirable as that possibility may appear to a defendant as an anchor to windward, requires more." *United States* v. *Lachmann,* 469 F.2d at 1044. Although there are cases to the contrary, e.g., *Green* v. *Reading Co.,* 183 F.2d 716, 719 (3d Cir. 1950); *Westchester Fire Ins. Co.* v. *Hanley,* 284 F.2d 409 (6th Cir. 1960), cert. denied, 365 U.S. 869 (1961), the great weight of authority requires that the grounds of an objection be detailed for the judge's benefit. *Narkin* v. *Springfield, supra* at 492. The purpose of this requirement is to give the trial court a chance to amend its charge. *Marshall* v. *Nugent,* 222 F.2d at 615. Merely objecting, as the counsel for the defendant did here, has no curative value, and will not preserve for appeal an objection to a judge's not giving certain jury instructions.

B & M also asserts that the judge violated rule 51(b) when he failed to inform the parties of his decision on their requests for jury instructions and that this requires a new trial, despite the inadequacy of B & M's objections to the charge. Since the defendant's argument on this point amounts to no more than that assertion, and as no objection was made to that failure, we need not consider the question now.

3(a). The defendant made no timely objection to the testimony of the fire chief, and its motion to strike was properly denied.

(b). The defendant objected to the admission of an "Engineer Inspector's Report" on the stated ground of irrelevance. A copy of the report was not included in the appendix to the defendant's brief. We gather from the engineer's testimony that he stated in his report that the bell ringer in the front end of the railroad car had a "bad air leak." As his testimony regarding the report indicates that the horn in the front end was operative, the relevance of the report was at most doubtful. Still, look-

ing at the state of the evidence at the moment when the report was admitted, we cannot say that its admission was beyond the judge's discretion. Even if its admission was error, no harm resulted.

*Judgment affirmed.*