**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-30388

RONNIE L. MORGAN, JR.,

Plaintiff-Appellee

v.

CORNEL HUBERT, Warden, Elayn Hunt Correctional Center,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-cv-5700

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant Cornel Hubert, warden of the Elayn Hunt Correctional Center (EHCC) in Louisiana, appeals the district court's denial of qualified immunity for his alleged involvement in the transfer of inmates from prisons affected by Hurricane Katrina. Ronnie Morgan, a prisoner transferred to EHCC from Orleans Parish Prison (OPP), asserts violations of the Eighth Amendment for injuries allegedly sustained there when he, a prisoner in protective custody, was placed with the general prison population. Hubert moved to dismiss Morgan's

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

complaint under Federal Rule of Civil Procedure 12(b)(6) on the basis of qualified immunity, but the district court denied the motion as to Hubert's individual capacity. We vacate and remand for discovery limited to the issue of qualified immunity.

## I. PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

Morgan filed suit under 42 U.S.C. § 1983 against, among others, Warden Hubert, in his individual and official capacities, and alleged violations of the Eighth Amendment. In his original complaint, Morgan alleged that Hubert "developed and pursued policies and customs that created the substantial risk of bodily harm to [Morgan] and other inmates, and which evidence a deliberate and gross failure to supervise his subordinates." Morgan further alleged that Hubert (1) failed to provide safety for OPP prisoners in protective custody, as well as adequate food, housing and medical care; (2) failed to train his staff in matters of inmate safety; (3) failed to train his staff to determine what remedial action was necessary after an attack to prevent future assaults; and (4) failed to provide medical care and protection to inmates after they were attacked.

Hubert moved to dismiss on the basis of qualified immunity. The magistrate judge heard argument and ordered Morgan to amend his complaint or file a reply in response to the defense of qualified immunity. He filed both, alleging in his amended complaint that Hubert, as the policymaker for EHCC, knew or should have known that transfers from OPP would include prisoners in protective custody, and that such prisoners would need to be segregated from the general prison population for their safety. Morgan claimed that Hubert had or should have had procedures and policies in place to segregate these protective custody prisoners, and should have taken steps to ensure that the policies were followed respecting the prisoners from OPP. Morgan alleged that Hubert's failure to take the necessary steps created a substantial risk of harm to Morgan and caused his injuries. Alternatively, Morgan alleged that Hubert's failure to

have policies in place for the segregation of protective custody inmates created a substantial risk of harm and caused Morgan's injuries. Morgan emphasized that these allegations described acts of Hubert personally, and that he failed personally either to have the policies in place or to ensure that his staff was adequately trained in them.

After considering Morgan's amended complaint and reply, the magistrate judge recommended that Hubert's motion be granted as to his official capacity (because Hubert in this capacity is not a person under § 1983, a point Morgan conceded), but denied as to his individual capacity. The judge found that Morgan adequately alleged violation of a constitutional right and that, if the facts in the complaint were accepted as true, Hubert acted unreasonably and was not entitled to qualified immunity. Hubert objected. The district court denied Hubert's motion as to his individual capacity, agreeing with the magistrate judge that Morgan had alleged facts that, if true, established the violation of a clear constitutional right and that Hubert's failure to act reasonably created a substantial risk to Morgan of which Hubert was deliberately indifferent. Hubert appealed.

As this appeal is interlocutory, predicated on the denial of a motion to dismiss on the basis of qualified immunity, we take the facts alleged in Morgan's complaint as true. Morgan is a federal prisoner under the jurisdiction of the United States Federal Bureau of Prisons. He was housed at OPP pursuant to a contract between the U.S. Department of Justice and the Orleans Parish Criminal Sheriff's Office. OPP is run by Orleans Parish Criminal Sheriff Marlin Gusman, another defendant in this case (though not a party to this appeal). For reasons not clear from the record, Morgan was in protective custody at OPP.

Following Hurricane Katrina's landfall on August 29, 2005, OPP lost power, and the inmates did not have food, water, medical care, or working toilets. The prisoners, including Morgan, were transported on September 1,

2005, to EHCC and placed in a large field surrounded by guards with thousands of other prisoners. Upon arriving at EHCC, Morgan and other prisoners in protective custody informed the guard of their status and requested that they not be placed with the general prison population. One protective custody prisoner told the guard that he saw his enemies in the field. The guard told them not to disclose their status; Morgan told the guard that their clothing was marked with the word "Federal." The other prisoners gathered at the gates in anticipation of the arrival of the protective custody prisoners and called out to each other to draw attention to that fact.

Despite the protestations of Morgan and the other prisoners, the guard placed them in the field with the general prison population. Within minutes one prisoner in protective custody was beaten and stabbed. When he sought help from the guards, they allegedly shot at him, perhaps with a bean bag gun. Other such inmates were also attacked. About thirty minutes after arriving, Morgan too was beaten and stabbed in his head and neck. Like the other prisoner, Morgan also sought help from the guards. The guards allegedly rebuffed Morgan too, responding with laughter; he was forced him to spend the night on the field with his attackers, wandering about in blood-soaked clothing and too terrified to sleep. The following day, he was transported to another prison facility. The complaint alleges that while at EHCC, he did not receive medical care or protection, despite having requested both from the guards.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to hear an interlocutory appeal from an order denying qualified immunity to the extent it turns on a question of law. *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996).

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law:

whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions . . . .

*Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). To the extent this appeal turns on questions of fact, we lack jurisdiction to hear it.

We review the district court's denial of qualified immunity *de novo*. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252 (5th Cir. 2005). We apply the heightened pleading standard announced in *Schultea v. Wood*, in which we observed that a district court may, after assessing a complaint under the normal Federal Rule of Civil Procedure 8 standard, require the plaintiff to file a reply under Rule 7 tailored directly at the defendant's assertion of qualified immunity. 47 F.3d 1427, 1433–34 (5th Cir. 1995). We did not ground any such requirement in Rule 9(b), but nevertheless required a plaintiff to plead more than conclusions. *Id.* at 1434. Specifically, we reasoned that "a plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, *at least when those facts are known to the plaintiff and are not peculiarly within the knowledge of defendants.*" *Id.* at 1432 (emphasis added). "Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

The parties disagree regarding the substantive standard governing a Rule 12(b)(6) motion to dismiss. Hubert argues for the standard announced by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), while Morgan recites the test given by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (describing the "no set of facts" test). The Supreme Court recently settled the dispute by applying the *Twombly* standard—that a complaint must state a claim that is "plausible on its face"—to all civil cases. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50, 1953 (2009); *see also Twombly*, 550 U.S. at 570. "This standard 'simply calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence of" the necessary claims or elements." *In re So. Scrap Material Co.,* 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

We must decide, under *Schultea's* heightened pleading standard, if Morgan has pleaded sufficient facts to state a claim against Hubert. In doing so, we must examine the contours of qualified immunity, the governing standards of which are clear:

> First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right. Without an established right, qualified immunity is granted. Second, if the plaintiff has alleged a violation, the court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident.

*Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004) (internal quotation marks and citation omitted).

The relevant constitutional right at issue is the Eighth Amendment's guaranty of protection from inmate violence. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). A plaintiff can prove an Eighth Amendment violation by showing the following two elements: "First, the deprivation alleged must be, objectively, sufficiently serious . . . . [T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). Second, the plaintiff must prove that the prison official acted with deliberate indifference to that risk: "[A] prison official cannot be found liable under the

Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Federal courts now have the discretion to sidestep the preliminary inquiry—whether plaintiff has sufficiently alleged the violation of a constitutional right—and proceed directly to consider the right's clarity. *Pearson v. Callahan*, 129 S. Ct. 808 (2009) (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)). In the context of the Eighth Amendment issue presented here, the order is of less importance because the obligation of prison officials to protect prisoners from violence at the hand of other inmates is clear.[1] *See Farmer*, 511 U.S. at 828; *Longoria*, 473 F.3d at 592. Thus, we will proceed directly to consider whether Morgan has alleged a substantial risk of serious harm of which Hubert was deliberately indifferent. If he has, then he has alleged the violation of a clear constitutional right.

A.    *Substantial Risk of Serious Harm*

The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quotation marks omitted). In other words, "an official's act or omission must have resulted in the denial of the minimal civilized measure of life's necessities." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004) (quotation marks omitted). In *Farmer*, the Supreme Court described the right of inmates to protection from assault by their fellow

---

[1] A right is clear if a reasonable officer would know that his conduct violates that right. *See Hope* v. *Pelzer*, 536 U.S. 730, 739 (2002). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted).

prisoners in clear language: "Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial, criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." 511 U.S. at 833 (alterations in original) (internal quotation marks and citations omitted). The Court continues: "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e], any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* (alteration in original and quotation marks omitted). There is little question that being stabbed and beaten by other inmates is serious harm. The closer question is whether placing Morgan in a field with the general prison population raised a substantial risk of that harm.

Although "[c]lassification of prisoners is a matter left to the discretion of prison officials," *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990), once a prisoner has been placed in protective custody, for whatever reason, reasonable prison officials would recognize that commingling such inmates with the general prison population presents a substantial risk of violence. The primary purpose of placing inmates in protective custody is, as the name suggests, to protect them from prison violence. Hubert argues that Morgan has not alleged why he was in protective custody or that he told the EHCC guards the underlying reasons, but that is beside the point. While that information would be useful, it is not necessary to establish the presence of a substantial risk of harm. *See Farmer*, 511 U.S. at 843. We are of the opinion that placing Morgan, a prisoner in protective custody at the time, on the field with the general prison population created an objective and substantial risk to his safety.

## B. *Deliberate Indifference*

We move next to the subjective element of an Eighth Amendment claim, deliberate indifference. As noted, deliberate indifference requires the defendant both to know the facts from which he could reasonably conclude that an excessive risk of serious harm is present, and to make that inference; that is, he must subjectively decide to disregard the risk. *See Farmer*, 511 U.S. at 837. The question of what Hubert subjectively knew is a question of fact. *See id.* at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Hence, we lack jurisdiction to consider it on the merits. *See Longoria*, 473 F.3d at 595 ("Whether a prison official had knowledge of a substantial risk to inmate safety is a question of fact over which this court lacks jurisdiction."). As such, the only issue here is whether Morgan alleged sufficient facts to state a plausible case against Hubert individually, including the requisite subjective knowledge.

In his amended complaint and reply, Morgan alleges the following facts regarding Hubert's personal actions: (1) that Hubert created policies that placed Morgan in substantial risk of harm; (2) that he failed adequately to house, feed, and provide medical care for inmates evacuated from OPP, and particularly failed to provide protection to inmates in protective custody and to provide medical care to those assaulted; (3) that Hubert knew or should have known that transfers from OPP would include prisoners in protective custody; (4) that Hubert knew or should have known of the need to segregate these prisoners; (5) that Hubert failed to follow the policies he had in place for the segregation and protection of prisoners, and that he failed to ensure that his staff followed the policies; (6) in the alternative that Hubert failed to enact any policies and was thus deliberately indifferent to Morgan's rights; and (7) that Hubert had a

personal duty to create and implement these policies or to oversee those who created and implemented the policies.

The difficulty with these allegations is that they fail to state specifically such important facts as when Hubert knew of the transfers and what his policies were regarding them, including the handling of prisoners in protective custody. *See Schultea*, 47 F.3d at 1434 (requiring the plaintiff to support a "claim with *sufficient precision and factual specificity* to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts" (emphasis added)). The time line from Hubert's planning for the hurricane to Morgan's arrival at EHCC is crucial to the deliberate indifference analysis, directly bearing on Hubert's knowledge of the events. The failure of specificity is no fault of Morgan's, however, because he has not yet had the benefit of discovery, and is bound by Rule 11 to allege only those facts for which he has or will likely have evidentiary support. As we said in *Schultea*, we do not require a plaintiff to plead facts "peculiarly within the knowledge of defendants," *id.* at 1432, and the facts omitted fall squarely within that category.

We are mindful that the protection afforded by qualified immunity applies to the lawsuit itself, and not merely to liability, and thus the issue should be resolved as early as possible. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Thus, we are reluctant to allow the case to proceed to full discovery with important questions regarding qualified immunity left unanswered. *Schultea* points the way forward. We noted there the district court's ability to tailor discovery to the defense of qualified immunity: "The district court may . . . limit any necessary discovery to the defense of qualified immunity." 47 F.3d at 1434. Such a course is called for here. Because key facts are unknown, and because these facts are solely within Hubert's possession, we do not consider the parties' remaining arguments regarding deliberate indifference. Instead, we vacate the district court's denial of qualified immunity and remand for discovery limited to

that issue. We instruct the district court to carry the issue of qualified immunity and decide it anew once that discovery is complete.

Additional facts establishing the time line are particularly important when evaluating the second prong of the qualified immunity test—the reasonableness of Hubert's actions in light of the clearly established constitutional right. While the fact of Hurricane Katrina is unquestionably relevant to this inquiry, so too are the facts noting when Hubert learned of impending transfers and what steps he took to prepare for them. Several days of notice versus hours or even minutes of notice greatly changes the reasonableness calculus. Under such circumstances, remand for limited discovery is appropriate.

## CONCLUSION

We express no opinion on the ultimate success of Morgan's lawsuit. At this stage in the litigation, crucial facts necessary to resolve the issue of qualified immunity are unknown. Therefore, consistent with *Schultea*, we VACATE the district court's denial of qualified immunity and REMAND for discovery limited to that issue.