# United States Court of Appeals

## For the First Circuit

No. 12-1155

MARK MENARD and CAROL E. MENARD,

Plaintiffs, Appellants,

v.

CSX TRANSPORTATION, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor,  U.S. District Judge]

Before

Lynch, Chief Judge,

Boudin and Thompson, Circuit Judges.

Thomas J. O'Connor, Jr. with whom S. Thomas Martinelli was on brief for appellants.
Andrew E. Tauber with whom Brian J. Wong and Mayer Brown LLP were on brief for appellee.

October 24, 2012

**BOUDIN**, <u>Circuit Judge</u>.  Mark Menard and Carol Menard appeal from a district court order dismissing their complaint for failure to state a claim and denying their motion to amend the complaint.  Mark Menard, whom we refer to as "Menard," was permanently injured while crossing through a railroad freight yard; the district court ruled that his complaint against CSX Transportation, Inc. ("CSX") failed to assert sufficient facts to overcome his status as a "trespasser" and thereby state a claim under Massachusetts law.

Menard's version of the accident, which we accept as true for purposes of the motion to dismiss, is to be taken from his complaint and, in this regard, we include any elaboration set forth in his proposed amendment.  <u>Bos. & Me. Corp.</u> v. <u>Town of Hampton</u>, 987 F.2d 855, 868 (1st Cir. 1993).  The amended complaint was disallowed only because it was deemed futile; and, as we assume it would otherwise have been allowed since it was the first attempted amendment, its added factual allegations will also be taken as true.

In July 2008 Menard lived in West Springfield, Massachusetts, near a rail freight yard owned and operated by CSX, and he regularly walked across the rail yard on his way to and from his home, as did others who lived in the area.  This included, as it turned out, crossing active railroad tracks.  Heading home on July 30, 2008, Menard entered the rail yard; he says that at least

-2-

three CSX employees saw him enter, he made eye contact with some and none told him to leave. Menard says that signs did not clearly warn him of the dangers of entering the yard but does not deny knowing that it was railroad property used to switch and store trains.

Once inside the rail yard, Menard saw several trains on different tracks, including one train on the track nearest to him that was moving very slowly under the control of an engineer and the guidance of a conductor on the ground. Menard made eye contact with both. Neither warned him to leave although the conductor waved his right arm, apparently to indicate that Menard should move in one direction. Menard continued to walk across the rail yard until, at some point, his right foot was pinned as an activated rail switch moved a segment of track.

With his foot crushed and in great pain, Menard freed himself and staggered about 30 feet, where he was struck by an oncoming train. Grabbing the train to prevent being dragged under it, he nevertheless ultimately fell under the train and his left leg was severed, his left arm was badly damaged in the encounter and his right foot was later amputated. In May 2011, just under three years after the accident, Menard and his mother, Carol Menard, filed a complaint in Massachusetts state court against CSX, which the latter removed to federal court based on diversity.

One count of the complaint asserted both a recklessness claim and a negligence claim on Menard's behalf; the other count, for Carol Menard, is for loss of consortium and, having been abandoned on the appeal, needs no discussion here. CSX answered and moved to dismiss for failure to state a claim. Menard moved to amend the complaint, adding more detail and separating his own prior count into two: a negligence claim and a separate claim charging "willful and wanton conduct" by CSX.

Thereafter, the district court ruled that Menard was indisputably a trespasser in the rail yard so that the only duty that CSX owed to Menard under Massachusetts law was a duty to refrain from willful, wanton or reckless conduct--with one qualification, namely, that state law imposes a duty of reasonable care on the property owner where a trespasser is in a position of "peril" inside the property and his presence is known to the owner. Menard v. CSX Transp., Inc., 840 F. Supp. 2d 421, 424 (D. Mass. 2012).

Given this legal framework, the district court held that the initial complaint failed to state a claim and that the facts alleged in the proposed amended complaint, accepted as true, also failed to do so: they did not allege that any employee knew that Menard was in the vicinity of the switch or otherwise in a position of peril; and, even if a CSX employee did see Menard staggering across the rail yard after he freed himself from the switched

rails, Menard alleged no facts to suggest that any reasonable steps were available to CSX to protect Menard from being struck or falling under the train. Id. at 424-28.

On Menard's appeal, this court reviews the dismissal de novo, accepting allegations of fact but not "conclusory legal allegations (which need not be credited)." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). The district court correctly stated Massachusetts law: a trespasser is generally protected only against willful, wanton or reckless conduct by the owner save that an owner, if aware of a trespasser who is in a position of peril, must take reasonable steps to avert injury to the trespasser.[1]

The qualification, of some importance here, is more precisely reflected in one of the earlier cases, Pridgen v. Boston Housing Authority, 308 N.E.2d 467 (Mass. 1974); there the court held that the trial judge correctly instructed jury that

---

[1]Schofield v. Merrill, 435 N.E.2d 339, 340-341 & n.2 (Mass. 1982) ("trespasser is entitled to no greater duty of care from . . . the landowner . . . than that he refrain from wilful, wanton or reckless disregard for the trespasser's safety," although "reasonable care" is owed to trespassers who are known to be in a "position of peril" and (by statute) to "certain foreseeable child trespassers"); accord Boyd v. Nat'l R.R. Passenger Corp., 845 N.E.2d 356, 362 (Mass. 2006) (railroad not liable for negligence in causing the death of a trespasser but "can be held liable for damages if the conduct of its agents that caused such death was wilful, wanton, or reckless"); McDonald v. Consol. Rail Corp., 502 N.E.2d 521, 523-25 (Mass. 1987) (general rule is that landowner's only duty to adult trespasser is to refrain from willful, wanton and reckless conduct).

> although an owner or occupier of land owes a trespasser only the duty to refrain from wilful, wanton or reckless conduct, where a trespasser is in a position of peril or in a helpless situation and his presence becomes known, the owner then has a duty to use reasonable care to avoid injuring him.

Id. at 474.

The common law rule limiting liability to trespassers, Restatement (Second) of Torts § 333 (1965), has been modified in some jurisdictions to require landowners to exercise "reasonable care under all the circumstances in the maintenance and operation of their property," e.g., Ouellette v. Blanchard, 364 A.2d 631, 634 (N.H. 1976); accord Rowland v. Christian, 443 P.2d 561, 566 (Cal. 1968), superseded in part by Cal. Civ. Code § 847 (West 2012), or reasonable care when the landowner "know[s] that the presence of trespassers is to be expected," e.g., Eichelberg v. Nat'l R.R. Passenger Corp., 57 F.3d 1179, 1183-84 (2d Cir. 1995) (Calabresi, J.) (citation omitted) (stating Connecticut law).

Indeed, the Restatement itself softens the common law rule by yet another variation, creating liability for failure to exercise "reasonable care" for the safety of trespassers when a landowner "knows" or "should know" that "trespassers constantly intrude upon a limited area" of his property. Restatement (Second) of Torts § 334. But in Schofield, the Supreme Judicial Court, finding the arguments for abolishing the common law rule to be "unconvincing," squarely rebuffed a proposal by the dissenters to

extend the duty of reasonable care to known or likely trespassers. Compare 435 N.E.2d at 344 (majority opinion), with id. at 345-47 (Liacos, J., dissenting).

Menard's broadest position is that railroad employees were aware that he had entered the rail yard and, knowing that such a yard is a place of danger, they acted both negligently and willfully, wantonly and recklessly in failing to warn him off the property. As to danger there can be no doubt: an active railroad yard hosts a number of interconnected track segments and multiple trains are liable to be moving at the same time. Menard himself can hardly have been ignorant of these hazards since his complaint alleges that he crossed through the yard with some regularity.

In any event, if Menard is deemed a trespasser, the duty owed to him--unless and until a specific peril threatened him and this became known to CSX--was only to avoid willful, wanton or reckless conduct. Whatever the risk in crossing a railroad yard, the dangers of injury in this case were apparently not so severe as to prevent regular crossings of the yard by Menard and others like him. Absent aggravating circumstances, the case law in Massachusetts makes clear that an adult who chooses without permission to trespass upon railroad tracks is not entitled to recover.[2]

_____

[2]See, e.g., Montes v. Mass. Bay Transp. Auth., 843 N.E.2d 611, 616 (Mass. 2006) (plaintiff, a trespasser on defendant's tracks, must show that "the risk of death or grave bodily injury to him was

Neither in the district court nor on appeal does Menard ever directly dispute that he was a trespasser or argue that he was there by permission or as a licensee. Menard's proposed amended complaint does allege the CSX "repeatedly and persistently permitt[ed] individuals, including Mr. Menard, to cross the Railroad Yard with regularity." But this appears to be aimed at characterizing the failure to interdict him as reckless rather than as a claim of permission or license.

In any event, about the closest Massachusetts case law seems to come to a case of possible implied permission or license to cross railroad tracks involved stronger facts: a crossing was not merely used with regularity but appeared on the railroad's own maps, was marked with a crossing sign, and was laid with planks. Miller v. Bos. & Me. Corp., 397 N.E.2d 341, 342-43 (Mass. App. Ct. 1979).[3] Menard nowhere alleges facts similar to those in Miller, even if a licensee argument were not forfeit by failure expressly to advance it in the lower court and in this one.

_____

known or reasonably apparent" to the train operator and that the operator "chose to run the risk rather than alter his conduct or . . . failed reasonably to recognize the risk").

[3]Moreover, the plaintiff in Miller was a minor (age 12), 397 N.E.2d at 342, and Massachusetts law establishes that landowners owe a higher duty of care to foreseeable child trespassers than to adult trespassers. See Mass. Gen. Laws Ann. ch. 231, § 85Q (West 2012); Soule v. Mass. Elec. Co., 390 N.E.2d 716, 718-21 (Mass. 1979).

Massachusetts law makes it a crime to walk across railroad tracks anywhere except at established crossings, see Mass. Gen. Laws Ann. ch. 160, § 218 (West 2012), and its courts have taken this to refute any claim of an implied license to walk on any other point along the tracks.[4]  A child who trespasses on train tracks may yet be able to recover for injuries sustained provided that the child's presence was "foreseeable" to the railroad and that the child did not "realize the risk involved," McDonald v. Consol. Rail Corp., 502 N.E.2d 521, 524 (Mass. 1987) (internal quotation marks omitted), but Menard was no child.

Menard says that the conductor guiding the slow-moving train on the track--the first track that Menard crossed on his fateful walk cross the rail yard--waved his arm at Menard.  This confirms in some sense that a CSX employee knew Menard was in the yard; but Menard makes no claim that the conductor was beckoning him into the yard or across the track.  The amended complaint merely says that the conductor "waved his right arm as though to direct Mr. Menard to move to his right."

To this point in his journey through the yard, Menard's own version of events fails to state a claim but the answer might be different as to what happened thereafter.  In substance, Menard

---

[4]See, e.g., Shattuck v. Trs. of Bos. Univ., No. SUCV2006-03635-E, 27 Mass. L. Rep. 288, 2010 Mass. Super. LEXIS 225, at *7-8, 2010 WL 3232296, at *3 (Mass. Super. Ct. Aug. 3, 2010); see also Gage v. City of Westfield, 532 N.E.2d 62, 70 n.8 (Mass. App. Ct. 1988).

says that after he continued on his way, his foot was trapped and badly injured by the shifted track; that he then stumbled on about 30 feet after the injury; and that "[u]pon information and belief, employees and/or agents of CSX knew that Mr. Menard had been injured by the rail switch and had sufficient time to take action to prevent further injury to him."

The quoted statement clearly aims to invoke the exception to the trespasser rule for those perceived to be in peril, see Pridgen, 308 N.E.2d at 476-77, but nothing in the complaint provides any facts to support the general statement either that Menard was seen by CSX workers after he was hit or, if seen, could have been rescued by reasonable care. Menard says the allegation is made on "information and belief"; but if he had any facts to support this assertion, they should have been set forth. "Information and belief" does not mean pure speculation.[5]

As the district judge observed, neither the original complaint nor the proposed amendment "allege that Mr. Menard saw any employees in the vicinity of the railroad switch when he was injured, that he called to anyone for help, or that any specific person saw Mr. Menard's peril." Menard, 840 F. Supp. 2d at 428.

---

[5]"Upon information and belief" signifies that "allegations are 'based on secondhand information that [the asserting party] believes to be true.'" Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 442 (7th Cir. 2011) (quoting Black's Law Dictionary 783 (7th ed. 1999) (alterations omitted)); see also Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103 F.3d 294, 299 (3d Cir. 1996).

Nor do the complaints "even allege how much time passed between Mr. Menard's first and second injuries," let alone identify even briefly what could have been done by CSX workers in the interval. Id.

In years past general statements tracking the law were often regarded as a passport to discovery or trial; but circuit precedent had been tightening even before the Supreme Court made clear in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), that conclusory statements must rest on pleaded facts. This is so not only of legal boilerplate (e.g., "conspiracy," "willfully") but also of assertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint.[6]

Nevertheless, "some latitude" may be appropriate where a plausible claim may be indicated "based on what is known," at least where, as here, "some of the information needed may be in the control of [the] defendants." Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir.), cert. denied, 132 S. Ct. 1969 (2012). Here, one

_____

[6]See, e.g., Acosta v. U.S. Marshals Serv., 445 F.3d 509, 514 (1st Cir. 2006) ("conclusory assertion that [defendants] were deliberately indifferent to his serious medical needs"); E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, 357 F.3d 1, 7-9 (1st Cir. 2004) (implausible assertions as to relevant market); Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) (conclusory assertion that obligations were "assumed" unsupported by any identified act or document).

might not expect precise recollection from a man badly injured by a switched track and shortly thereafter hit and dragged under the train. By contrast, CSX likely made its own investigation which, if not privileged, could easily reveal just what its employees saw between the switch accident and the denouement.

Where modest discovery may provide the missing link, the district court has discretion to allow limited discovery and, if justified, a final amendment of the complaint. This court suggested as much in Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 596-97 (1st Cir. 2011), indicating that where "discovery is likely to reveal the identity of the correct defendant and good faith investigative efforts to do so have already failed," the "interests of justice" may warrant remand for limited discovery.[7] If tempered by sound discretion, Twombly and Iqbal may produce the best that can be expected in human affairs which is a sensible compromise between competing legitimate interests.

In the end, the response to Twombly and Iqbal is still a work in progress; and we think that a limited remand is appropriate to allow Menard to explain to the district judge what basis he has

---

[7]See also Loosier v. Unknown Med. Doctor, 435 F. App'x 302, 307 (5th Cir. 2010) (per curiam) ("remand for limited discovery" regarding "facts peculiarly within the knowledge of defendants"); Morgan v. Hubert, 335 F. App'x 466, 473 (5th Cir. 2009) (per curiam) (same); see also Swanson v. Citibank, N.A., 614 F.3d 400, 412 (7th Cir. 2010) (Posner, J., dissenting in part) (judge may allow "limited discovery" while deferring decision on motion to dismiss).

to believe that narrow discovery is warranted as to the brief interval between the switch incident and Menard's fall under the wheels of the train.  If anything beyond speculation supports Menard's "information and belief" allegation, that too can be disclosed.  After that, the matter is confided to the discretion of the district judge.

The judgment is <u>vacated</u> and the matter <u>remanded</u> for further proceedings consistent with this decision.  If Menard on remand offers no solid basis for the remaining peril-and-negligence allegation and limited discovery is not shown to be promising, the judgment should be reinstated.  Each side shall bear its own costs on this appeal.

<u>It is so ordered.</u>