# United States Court of Appeals
## For the First Circuit

No. 15-1448

ELBA SALDIVAR,

Plaintiff, Appellant,

v.

DANIEL RACINE; THE CITY OF FALL RIVER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Edward J. McCormick, III, with whom McCormick & Maitland was on brief, for appellant.
Andrew J. Gambaccini, with whom Reardon, Joyce & Akerson, P.C. was on brief, for appellee Daniel Racine.
Gary P. Howayeck, Office of the Corporation Counsel, City of Fall River, for appellee the City of Fall River.

March 25, 2016

**BARRON**, **Circuit Judge**.  Elba Saldivar appeals the dismissal of her federal civil rights and state law negligence claims against the City of Fall River, Massachusetts, and Fall River Police Chief Daniel Racine.  The District Court dismissed those claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  We affirm.

## I.

The allegations set forth in Saldivar's complaint[1] are very disturbing.  As we are reviewing a dismissal for failure to state a claim, we accept the complaint's factual allegations as true and draw all reasonable inferences from those facts in favor of Saldivar.  See Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  So read, the complaint offers the following account.

In early June 2011, Elba Saldivar, a resident of Fall River, contacted the Fall River Police Department and reported that her child had been harassed at school.  The Police Department assigned Officer Anthony Pridgen to investigate the incident.

Pridgen arrived at Saldivar's apartment in his marked police cruiser and in full uniform and told Saldivar he needed to question her as part of his investigation.  Saldivar allowed Pridgen into her apartment.

---

[1] The operative complaint in this case is the Second Amended Complaint.

Upon entering the apartment, Pridgen pulled out his service handgun and pointed it at Saldivar. He then grabbed Saldivar and assaulted, battered, and raped her. He told Saldivar he would kill her and her children if she reported the assault.

Despite Pridgen's threats, Saldivar reported the assault to the Police Department, and the Department conducted an investigation. The investigation uncovered security camera footage at Saldivar's housing complex that showed a police cruiser parked next to one of the buildings in that complex and Pridgen entering and leaving that building. A subsequent search of Pridgen's police locker led to the seizure of various items, including two condoms and two packages of "Extenze" tablets.

Pridgen resigned from his job as a Fall River police officer on June 28, 2011. In September of that same year, the Bristol County, Massachusetts, District Attorney's office informed Saldivar that it would not prosecute Pridgen.

The complaint also sets forth the following allegations concerning how Pridgen had been disciplined by the Police Department on various occasions prior to the alleged assault.[2] In

---

[2] The operative complaint lists, without elaboration, eleven disciplinary actions taken against Pridgen. The defendants asked the District Court to consider the disciplinary record itself, on the ground that the record is central to Saldivar's claims. The District Court appears to have done so. Because Saldivar does not object to the District Court's having considered the disciplinary record and discusses that record in her brief as if it were a part

February 2007, he was suspended for thirty days -- a punishment later reduced to a written warning and training -- for failing to abide by Department policy in handling a domestic violence call.[3] A few months later, in October 2007, Pridgen was suspended for five days without pay for violating the Department's sick leave policy. And, according to his disciplinary record, in January 2011, he was suspended for a day for violating the "[r]oll call/[leave benefit] policy." Pridgen was also reprimanded seven times between September 2003 and June 2011 for "[f]ailure to log & submit [e]vidence [f]orm," "attention to duty," "absence from duty/late," "cruiser accident," "pursuit policy," "tardiness," and "reports."

Pridgen's final disciplinary action came in June of 2011, shortly after the alleged rape and assault. At that time, he was suspended for five days without pay for allowing his license to carry his service handgun to lapse for five years.[4]

---

of her complaint, we, too, consider the record as part of the complaint.

[3] Pridgen was charged with "fail[ing] to adequately obtain pertinent information regarding the ongoing domestic situation and the presence of firearms," "fail[ing] to properly search for and seize potential firearms to alleviate the threat of serious violence," "fail[ing] to give the victim . . . adequate notice of her rights by handing and reading her a copy of the Fall River Police Department's Domestic Violence Rights form," and "clear[ing] the call, [k]nowing a domestic violence report was not completed."

[4] Saldivar obtained Pridgen's disciplinary record after she filed this suit and before she filed the operative complaint, when the District Court ordered the defendants "to produce forthwith

Saldivar brought suit against Pridgen, Fall River Chief of Police Daniel Racine, and the City of Fall River for (1) assault and battery by Pridgen; (2) violation of the Massachusetts Civil Rights Act by Pridgen and the City; (3) violation of 42 U.S.C. § 1983 by all defendants, and (4) negligent hiring, training, and supervision by the City.

Pridgen never entered an appearance in this case, and the District Court granted default judgment of $600,000 to Saldivar on her claims against him. Racine and the City then moved to dismiss all of Saldivar's claims against them for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). The District Court granted those motions and dismissed the complaint. See Saldivar v. Pridgen, 91 F. Supp. 3d 134 (D. Mass. 2015).

Saldivar appeals the dismissal of her § 1983 claim against Racine, her § 1983 claim against the City, and her negligent hiring, training, and supervision claim against the City.[5]

**II.**

We review the District Court's dismissal for failure to state a claim de novo, and we may affirm "on any ground made manifest by the record." Decotiis v. Whittemore, 635 F.3d 22, 28

---

the entire disciplinary record of Officer Pridgen to the Plaintiff."

[5] Saldivar does not appeal the dismissal of her claim against the City for violation of the Massachusetts Civil Rights Act.

- 5 -

(1st Cir. 2011) (quoting Roman-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010)).

To survive a motion to dismiss, Saldivar's complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In evaluating whether a complaint states a plausible claim, we "perform [a] two-step analysis."  Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015).  At the first step, we "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)).  At step two, we must "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable."  Id. (quoting García-Catalán, 734 F.3d at 103) (internal quotation marks omitted).

This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  "Applying the plausibility standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Decotiis, 635 F.3d at 29 (quoting Iqbal, 556 U.S. at 679).

- 6 -

**A.**

We begin with Saldivar's § 1983 claim against Racine. Section 1983 provides a cause of action when an individual, acting under color of state law, deprives a person of constitutional rights. See 42 U.S.C. § 1983.

Saldivar's complaint does not allege that Racine directly deprived her of such rights. But Saldivar is correct that a supervisory official like Racine may be held liable under § 1983 for the unconstitutional behavior of a subordinate like Pridgen. Of course, a supervisor is not liable under § 1983 for the actions of a subordinate on a respondeat superior theory. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). Rather, the supervisor is liable for the subordinate's actions if the subordinate's behavior led to a constitutional violation and if "the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Estate of Bennett v. Wainwright, 548 F.3d 155, 176-77 (1st Cir. 2008) (brackets omitted) (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)).

The District Court dismissed Saldivar's claim against Racine on the ground that Saldivar had failed to plausibly allege that Racine was deliberately indifferent. The District Court

- 7 -

explained that it reached that conclusion because the complaint failed to allege facts that would plausibly show that Racine had the requisite notice of the risk that Pridgen would assault Saldivar. See Saldivar, 91 F. Supp. 3d at 137-38.

Our precedent requires that same conclusion. In order for a police supervisor to be deemed "deliberately indifferent," the supervisor must have "actual or constructive knowledge" of a "grave risk of harm" posed by the subordinate and fail to take "easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998). The complaint does allege that Pridgen had a number of disciplinary violations prior to the alleged assault and rape. Those violations do not, however, include any that would indicate that Pridgen had any propensity for violence or for any other sufficiently related conduct. This absence renders speculative any inference that one might otherwise arguably draw that any officer who would commit such an offense likely had a record that would suffice to give such an indication.

Nor does Saldivar contend otherwise. The significance she attributes to the lengthy record of violations appears to be that they indicate that Pridgen "had a propensity for not following police regulations" and thus might not follow police regulations in the future. But, under our precedents, being alert to that possibility is not sufficient to make the supervisor liable for the harm caused by Pridgen on which Saldivar's § 1983 claim is

- 8 -

based.[6]   Thus, the complaint's recitation of Pridgen's past disciplinary violations does not show that it was plausible that Racine had notice that Pridgen posed a grave risk of harm.

Saldivar does contend that the fact that Pridgen did not have an active firearm license was sufficient -- at least given his past violations -- to put Racine on the requisite notice.  "As it is a crime in Massachusetts to carry a firearm without a license," Saldivar argues, "it is . . . foreseeable that an individual who carries a handgun without a license, will use it in the commission of a crime."  But, based on the precedents that we have cited, we cannot say that the fact that Pridgen did not have a license for his gun makes it plausible that Racine was on notice

---

[6] See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 93 (1st Cir. 1994) (concluding, on a motion for summary judgment, that five complaints levied against a police officer did not provide a superior officer with "the requisite notice" to support a claim of deliberate indifference for the assault of an arrestee where "[t]he five previous complaints stemmed from incidents completely unrelated to the present one" and thus "could not have alerted [the supervisor] to the fact that [the officer] had a propensity to assault citizens"); see also Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 21 (1st Cir. 2014) (holding, on a motion for summary judgment, that an officer's seven instances of misconduct over a nearly fourteen-year period, including a complaint of assault on a motorcyclist in 2004, were "not sufficient to put supervisors on notice that he presented a . . . 'grave risk' of shooting an arrestee"); cf. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 563-64 (1st Cir. 1989) (upholding a jury verdict finding a supervisor liable under § 1983 for a policeman's shooting car passengers while on duty where that supervisor had knowledge, due to thirteen citizen complaints, of the policeman's frequently brutal behavior, and yet took no action concerning those complaints).

that there was a "grave risk" that the Officer would use the weapon to commit a violent crime -- or would otherwise engage in violent conduct -- while on duty.[7]

We recognize that we are reviewing a dismissal of a complaint and thus that the plaintiff need not prove her allegations. At this early stage in the litigation, she need only make the kind of allegations that would suffice under the standard set forth in Iqbal, 556 U.S. 662. Indeed, as we have noted, seemingly all of our analogous § 1983 supervisory liability cases have been resolved at summary judgment, or at other later stages of the litigation. Nonetheless, under the Iqbal standard, the complaint must set forth facts that make the § 1983 claim plausible. Id. at 678. And, here, we do not believe the facts that have been set forth suffice to make it plausible that the supervisor -- Racine -- is liable under § 1983 for the horrific conduct by Officer Pridgen that is alleged.

---

[7] In connection with her negligence claim, Saldivar does make an argument regarding the Massachusetts gun licensing process. We address that argument below, in discussing Saldivar's negligence claim. Although Saldivar does not make this argument in support of her § 1983 claim, were we to consider the argument in evaluating that claim, our decision would not change. Similarly, in connection with her negligence claim, Saldivar references the complaint's allegations regarding the condoms and Extenze tablets found in Pridgen's locker and argues that those allegations make that claim plausible. She does not, however, make any argument that those allegations make her § 1983 claims plausible, and we conclude that those allegations also would not change our conclusion.

**B.**

Saldivar also appeals the dismissal of her § 1983 claim against the City for the harm she suffered from the assault by Officer Pridgen.  She relies for this claim on Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Monell held that although a municipality may not be held liable under a theory of respondeat superior for an employee's constitutional violation, it may be held liable when "execution of [the municipality's] policy or custom . . . inflicts the injury" and is the "moving force" behind the employee's constitutional violation.  Id. at 694.  "Official municipal policy includes," among other things, "the acts of [the municipality's] policymaking officials."  Connick v. Thompson, 563 U.S. 51, 61 (2011); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (holding that government policy or custom may be established by "a single decision by municipal policymakers under appropriate circumstances").

Saldivar argues that she has stated a plausible Monell claim because her complaint alleges that Racine was acting as a final policymaker for the City when he made decisions regarding Pridgen's retention, supervision, and training in response to Pridgen's disciplinary violations.  But even assuming that the allegation that Racine is a final policymaker is plausible, that allegation is not enough.  A City is liable under Monell for the

- 11 -

acts of a final policymaker only if those acts constitute deliberate indifference. See Connick, 563 U.S. at 61; Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). And so here, too, Saldivar's § 1983 claim may survive the motion to dismiss only if the complaint plausibly alleges that Racine was deliberately indifferent to the grave risk of harm that Pridgen posed. But that claim is not plausible for the reasons we have just given regarding the limited allegations contained in the complaint. And thus here, too, we agree with the District Court that the claim cannot go forward.[8]

## C.

Finally, Saldivar appeals the dismissal of her negligence claim against the City, which is brought under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258. See id. § 2 ("Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ."). To state a negligence claim under Massachusetts law, a plaintiff must allege that (1) the defendant

---

[8] Because we conclude that Saldivar's § 1983 claims are not plausible as alleged, we need not address the defendants' arguments that Racine is entitled to qualified immunity or that Pridgen was not acting under color of state law when he assaulted Saldivar.

owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; (3) damage resulted; and (4) the defendant's breach caused that damage.  See Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006).  In addition, under Massachusetts law, a determination "[w]hether negligent conduct is the proximate cause of an injury depends . . . on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct." Kent v. Commonwealth, 771 N.E.2d 770, 777 (Mass. 2002).

Saldivar argues that Racine breached a duty to her by not properly training Pridgen, not requiring him to be directly supervised, and by not terminating his employment, notwithstanding his lengthy record of disciplinary violations.  Assuming the complaint plausibly alleges that Racine was negligent in his response to those violations, the question remains whether that negligence was a proximate cause of the harm to Saldivar.

Massachusetts law is admittedly sparse with respect to what constitutes a foreseeable result in circumstances directly analogous to those present here.  But, as a general matter, the Massachusetts Supreme Judicial Court has held that where the kind of harm alleged is violent, the violent nature of that harm must be a reasonably foreseeable result of the defendant's negligence in order for that defendant to be liable for that harm.[9]  Moreover,

---

[9] See Carey v. New Yorker of Worcester, Inc., 245 N.E.2d 420, 454 (Mass. 1969) ("The specific kind of harm need not be

- 13 -

in cases in which a plaintiff alleges that an employer is liable under a theory of negligent supervision for the intentional tort of an employee, Massachusetts courts have required that the employer have known, or at least should have known, that the employee might harm someone in the same general manner in which the employee is alleged to have harmed the plaintiff.[10]

foreseeable as long as it was foreseeable that there would be harm from the act which constituted the negligence, provided it was foreseeable that there would be violence toward others."); see also Flood v. Southland Corp., 616 N.E.2d 1068, 1075-76 (Mass. 1993) ("A jury would be warranted in such circumstances in determining that a risk of harm, the stabbing of someone, was reasonably foreseeable. The way in which the stabbing occurred and the fact that the plaintiff might be the one to be harmed need not have been reasonably foreseeable." (citation omitted)).

[10] See, e.g., Foley v. Bos. Hous. Auth., 555 N.E.2d 234, 236-37 (Mass. 1990) (holding that a jury could not find that it was foreseeable to the employer that an employee might attack the plaintiff (a fellow employee) where "[t]here [was] no showing in the record of threats by employees, or a pattern of incidents involving employees, that reasonably would put the [employer] on notice that [the plaintiff] could be the target of an attack by a[ fellow] employee"); Foster v. The Loft, Inc., 526 N.E.2d 1309, 1311-13 (Mass. App. Ct. 1988) (holding that a jury could find that the assault was foreseeable where a customer alleged that he had been assaulted by the defendant's employee and that the defendant knew that the employee had a criminal record but did not take further action to determine whether that record would compromise the safety of customers and where the environment in which the employee worked posed a high potential for violence); Beal v. Broadard, 19 Mass. L. Rptr. 114, 2005 WL 1009632, at *4-5 (Mass. Sup. Ct. 2005) (holding that a jury could find that an alleged sexual assault perpetrated by a church's "ministerial servant" was foreseeable to an elder of that church, where that elder had knowledge of the perpetrator's "prior incidents of sexual dangerousness," but that a jury could not find that the assault was foreseeable to the church's state chapter, where "[t]he record contain[ed] not a scintilla of evidence that anyone ever informed [that defendant] of [the perpetrator's] purported sexual dangerousness prior to the alleged instances of abuse").

Given the state of Massachusetts law, Saldivar's allegations regarding Pridgen's past disciplinary violations are not enough to plausibly allege that the harm in this case was reasonably foreseeable to Racine. As we have explained, none of those violations appears to have involved violent behavior, nor does Saldivar allege that they reflect violent incidents. And so we conclude that the City is right that Pridgen's prior disciplinary violations are not sufficient to make out a plausible claim that Racine reasonably foresaw that the limited nature of his response to those violations would cause "the same general kind of harm" alleged here. See Jupin, 849 N.E.2d at 837 n.8.

The complaint does include other facts that, in conjunction with the disciplinary record, Saldivar argues put Racine on notice of the risk that Saldivar would engage in conduct that would cause the same general kind of harm alleged in this case. The complaint alleges that Pridgen had two condoms and two packages of Extenze tablets in his police locker and that Pridgen had let his firearm license lapse for five years. The condoms and Extenze tablets, Saldivar argues in her brief, raise the question whether the Police Department knew that Pridgen had those items in his locker and whether there was any Department prohibition on those items being at the station. As for the gun, Saldivar argues that it is reasonably foreseeable that someone with an unregistered

- 15 -

gun would "use it in the commission of a crime," as Pridgen did here.

But the complaint does not allege that Racine knew that Pridgen had condoms and Extenze tablets in his locker or that he was prohibited by Department policy from having them there. And we do not believe that the allegations in the complaint regarding the mere presence of those items -- absent any other facts that might illuminate their significance -- suffice to make it plausible that it was reasonably foreseeable to Racine that Pridgen would engage in violent conduct. That is true even if we consider them in connection with the complaint's other allegations, as the disciplinary record does not reveal violations for conduct of the "same general kind of harm" alleged here. See id. at 837 n.8. Nor, for reasons we have explained in addressing Saldivar's § 1983 claims, is it plausible that Racine's constructive knowledge of Pridgen's failure to keep his gun license up-to-date made it reasonably foreseeable that Pridgen would engage in such conduct.

Saldivar does make the additional contention in her brief that "license to carry in Massachusetts is discretionary and is issued only to those citizens deemed not to be a threat to society or who might use it in the commission of a crime." The suggestion -- though Saldivar does not develop the argument -- appears to be that Racine should have known of Pridgen's violent tendencies, as those violent tendencies would have been identified

- 16 -

had Racine made sure that Pridgen's gun license was up-to-date. But Saldivar did not include in her complaint the facts she now wants us to "note[]" regarding the workings of the Massachusetts licensing process for firearms.[11]  And because the complaint we have before us does not state any facts about how the licensing process works, the complaint necessarily fails to state facts that would suggest that the process would have identified, in particular, Pridgen's violent tendencies.  For these reasons, we conclude that Saldivar's negligence claim, as pled, is too speculative to survive a motion to dismiss.

## III.

We end by emphasizing that to survive a motion to dismiss a claim must merely be "plausible on its face."  Iqbal, 556 U.S. at 678.  Moreover, we have said that in cases "in which a material part of the information needed is likely to be within the defendant's control," "'some latitude may be appropriate' in applying the plausibility standard."  García-Catalán, 734 F.3d at 104 (quoting Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012)).  In such cases, we have said that "it is reasonable to expect that 'modest discovery may provide the missing link'

---

[11] The defendants, for their part, contend without citation that the "licensure . . . would amount to nothing more than the ministerial task of a renewal application."

that will allow the appellant to go to trial on her claim."  Id. (quoting Menard, 698 F.3d at 45).

But the missing link that is common to the claims at issue in the case before us has not been alleged "upon information and belief," as it was in Menard, see 698 F.3d at 44 & n.5, and is not plausible simply by appeal to common sense, as in García-Catalán, see 734 F.3d at 103.  Here, the gap between the allegations in the complaint and a plausible claim is wider than it was in those cases.  Importantly, Saldivar was allowed modest discovery before she filed her amended complaint, namely access to Pridgen's disciplinary record, upon which Saldivar's allegations are based.  There is no indication from that record, however, that any of the violations involved violent conduct.

Simply put, the complaint alleges conduct by a member of the City police force that is shocking.  But the complaint seeks to hold the officer's supervisor and the City liable.  Absent more facts than the complaint contains, we cannot discern a plausible claim for doing so under § 1983 or under the law of negligence in Massachusetts.  Accordingly, the decision of the District Court dismissing Saldivar's complaint is **affirmed**.