# United States Court of Appeals
## For the First Circuit

No. 20-1702

RICHARD ROE,

Plaintiff, Appellant,

v.

MARIANNE LYNCH, District Attorney for Prosecutorial District V,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Lynch, Lipez, and Barron,
Circuit Judges.

Michael A. Cunniff, with whom McCloskey, Mina, Cunniff & Frawley, LLC was on brief, for appellant.
Jonathan R. Bolton, Assistant Attorney General, with whom Aaron M. Frey, Attorney General of the State of Maine, was on brief, for appellee.

May 12, 2021

**LYNCH**, **Circuit Judge**.  Richard Roe was terminated from his employment with a police department ("the Department") by the Town Manager in a town in Penobscot County, Maine, in July 2019. His suit is based on his allegations that the local District Attorney, defendant Marianne Lynch, who was not his employer, sent a letter to the Department's police chief which led the Town to its decision.  Roe alleges the letter from Lynch stated that in light of allegations made about Roe's misconduct and the prosecutor's constitutional obligations under the Supreme Court decisions in Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972), Lynch had determined that Roe lacked credibility and so her office would "be unwilling to prosecute cases in which Officer [Roe] has involvement in the future."

Roe's state court complaint against Lynch alleged that Lynch violated his Due Process rights under the U.S. and Maine Constitutions by failing to provide him with meaningful notice and opportunity to dispute those allegations before she sent her letter to the police chief.  As to relief for the alleged violations, he sought issuance of mandamus and a declaratory judgment.

Lynch removed the case to federal court and Roe did not oppose or contest that removal then or at any time.  Lynch moved to dismiss under Federal Rules of Civil Procedure 12(b)(6) and

- 2 -

12(b)(1). The district court dismissed on state law grounds. We affirm the dismissal, albeit on different grounds.

I.

A. Facts

In reviewing a motion to dismiss, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Lee v. Conagra Brands, Inc., 958 F.3d 70, 74 (1st Cir. 2020) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)).

Roe was a veteran police officer who had served in different departments over about seventeen years when he applied for a patrol officer position with the Department in July 2018. The Department is located within Lynch's prosecutorial district. During a polygraph examination conducted as part of the hiring process, Roe disclosed incidents reflecting adversely on him which he had not disclosed in his application. He disclosed that (1) he had used unclaimed knives stored at a police station when he had previously worked for a different police department which he alleged never resulted in any allegation of misconduct; (2) he had been investigated by law enforcement and prosecutors for an on-duty use of force, which he alleges was resolved in his favor; and (3) he had been terminated from a prior police job for allegedly misusing a municipal credit card, but alleged the termination had been rescinded as part of a civil settlement with the municipal

employer and that he agreed to resign from the police department. Nonetheless, he was hired to the Department.

A new police chief ("the Chief") took over the Department in April 2019. Sometime before May 3, 2019, the Chief reviewed a report of Roe's polygraph examination which had been submitted to the former police chief. On May 3, 2019, based on the disclosures made in that polygraph examination, the Chief contacted a prosecutor in the District Attorney's Office and the prosecutor told the Chief to submit a form to the District Attorney's Office reporting those incidents.

The source of the Chief's concern was two Supreme Court cases. Under Brady, the prosecution is constitutionally required to disclose to a criminal defendant upon request "evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" United States v. Bagley, 473 U.S. 667, 674 (1985) (quoting Brady, 373 U.S. at 87). In Giglio, the Supreme Court recognized that the prosecution's Brady obligation includes the disclosure of information potentially useful to impeaching the credibility of a government witness where that information is favorable and material to guilt or punishment. 405 U.S. at 154-55; see also United States v. Misla-Aldarondo, 478 F.3d 52, 63 (1st Cir. 2007).

On May 7, 2019, the Chief spoke with Roe about some of the disclosures Roe had made during the polygraph examination and

told Roe that he would be submitting a letter of concern regarding those incidents to the District Attorney's Office. The Chief also requested that Roe complete a form providing further information as to those incidents, which would be submitted with any letter of concern. Roe did so; he also denied that the incidents reflected adversely on him.

On May 10, 2019, the Chief submitted the letter of concern, enclosing Roe's filled-out form, to the District Attorney's Office reporting the prior incidents and stating they reflected adversely on Roe's character and credibility. Roe alleges that the Chief's letter of concern mischaracterized those prior incidents and that he did not adequately investigate them or give Roe an opportunity to respond to the allegations before reporting them to the District Attorney's Office.

On May 30, 2019, Lynch sent a first letter to the Chief informing him that her office would disclose to defendants some of the prior incidents reported in the Chief's letter of concern as Giglio materials in cases where Roe would appear as a government witness. She did not determine at that time that Roe was "Giglio-impaired," i.e., that she would be unwilling to prosecute cases in which Roe was involved as an investigating officer. Roe alleges that neither Lynch nor the Chief notified him of Lynch's first letter and that Lynch did not notify him of or give him an opportunity to respond to the Chief's allegations in the letter of

- 5 -

concern before she sent the first letter. He alleges that if he had been given such an opportunity, he could have shown the allegations were false or unsubstantiated. There are no allegations that the Town took any action based on this first letter with respect to Roe's employment.

On June 27, 2019, the Chief sent a second letter of concern to the District Attorney's Office regarding new alleged misconduct by Roe. That second letter set forth a further statement that Roe had lied to the Chief and an allegation that he lied on a probable cause affidavit submitted to a court as to whether he had attempted to photograph a domestic violence victim's injuries when he first responded to the scene of the assault. The victim stated that Roe had not attempted to photograph her injuries the first time he responded. Roe alleges that the Chief did not adequately investigate the allegation or give him an opportunity to respond to the second letter of concern before it was sent to the District Attorney's Office.

On July 23, 2019, Lynch sent a letter to the Chief informing him that based on his second letter of concern, she had determined "that her office could 'be unwilling to prosecute cases in which Officer [Roe] has involvement in the future.'" Roe alleges that Lynch made this Giglio-impairment determination without first giving him notice of or an opportunity to respond to the allegations made in the Chief's second letter of concern.

On July 30, 2019, the Town Manager terminated Roe's employment as an officer with the Department. Roe alleges that the decision to terminate his employment was made "because the District Attorney's Office would not prosecute cases in which he was involved and that he was therefore 'not able to discharge this essential function of [his] job.'" The Town Manager gave Roe a copy of Lynch's Giglio-impairment decision letter at the meeting in which his employment was terminated, and Roe later obtained a copy of Lynch's first Giglio-related determination letter. After he was terminated, Roe wrote to Lynch several times requesting that she rescind her Giglio-impairment decision and provide him an opportunity to respond to the allegations in the Chief's second letter of concern, but she did not respond to his requests. Roe does not allege that Lynch requested, encouraged, or directly participated in the termination by the Town of Roe's employment with the Department.

B.  Procedural History

On January 24, 2020, Roe filed a complaint against Lynch in Maine state court alleging due process violations under the U.S. and Maine Constitutions. His complaint did not name the Town, the Department, the Town Manager, or the Chief as defendants. Roe alleged two counts for mandamus relief under Maine state law, seeking to compel Lynch (1) to rescind the two Giglio-related determinations which allegedly failed to comply with due process

and (2) to provide Roe meaningful notice and a meaningful opportunity to respond to allegations before any further Giglio-related determinations are made. See Me. Stat. tit. 14, § 5301. He made a similar request for declaratory relief under the Maine Declaratory Judgments Act. See Me. Stat. tit. 14, §§ 5951-5963.

Based on the assertion in Roe's complaint of a federal due process claim, Lynch removed to federal court. Roe did not oppose the motion. Lynch then filed a single motion arguing the complaint must be dismissed for failure to state a claim and for lack of subject matter jurisdiction, citing to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion focused on Roe's failure to state any due process claim; it also argued that Roe's claims for mandamus relief were untimely under state law. Lynch did not challenge Roe's Article III ability to bring the case.

On May 8, 2020, the district court granted Lynch's motion to dismiss. Roe v. Lynch, No. 1:20-cv-00050-LEW, 2020 WL 2310905, at *1-3 (D. Me. May 8, 2020). It held that Roe had not met a limitation period for the filing of mandamus which was considered to be jurisdictional under state law and that also barred declaratory relief. Id. at *2-3. The court did not rule that it lacked Article III jurisdiction. It also did not address the merits of the due process claims. Id. at *1.

- 8 -

On May 18, 2020, Roe filed a motion for reconsideration, which the district court denied on June 22, 2020. Roe timely appealed.

## II.

Roe argues on appeal that the district court erred in its ruling that his claims for relief under Maine statutes were time-barred. He also argues that he has alleged plausible claims for federal and state constitutional due process violations based on his asserted property interest in continued public employment.

There is federal question jurisdiction over this case under 28 U.S.C. §§ 1441(a) and 1331 because Roe explicitly asserted on the face of his complaint due process claims under the U.S. Constitution. See Ortiz-Bonilla v. Federación de Ajedrez de P.R., Inc., 734 F.3d 28, 34-37 (1st Cir. 2013).[1] Roe has never contended that he was relying only on state-law causes of action to vindicate his asserted rights. And the defendant clearly understood that Roe was asserting a federal cause of action.

We hold that Roe has not stated any claim against the District Attorney for a due process violation under either the U.S. or Maine Constitution, see Doe I v. Williams, 61 A.3d 718,

_____

[1] Ortiz-Bonilla v. Federación de Ajedrez de Puerto Rico, Inc., 734 F.3d 28 (1st Cir. 2013), was explicitly cited by the defendant in successfully seeking removal and neither party contends that decision does not control.

736-37 (Me. 2013) (holding that the Maine Constitution and the U.S. Constitution "create coextensive due process rights" and applying federal due process law), and so affirm the district court's dismissal of the complaint. "The district court's rationale is not binding upon us, and we may affirm an order of dismissal on any ground made manifest by the record."[2] Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021) (citing Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)); see also Chiplin Enters., Inc. v. City of Lebanon, 712 F.2d 1524, 1528-29 (1st Cir. 1983) (affirming the district court's dismissal made under Rule 12(b)(1) on the ground that the plaintiff failed to state a claim under Rule 12(b)(6)).[3]

---

[2] Roe has waived any argument based on any purported distinction between a ruling on a failure to state a claim and a ruling on jurisdiction. Lynch's motion to dismiss was filed under both Rule 12(b)(1) and Rule 12(b)(6).

[3] Because we have Article III jurisdiction and because under Maine law the Maine Constitution's Due Process Clause is coextensive with that of the U.S. Constitution, we have no need and do not reach the state law grounds on which the district court relied. See Nisselson v. Lernout, 469 F.3d 143, 150-51 (1st Cir. 2006).

We have Article III jurisdiction to reach the merits here because at least Roe's pursuit of relief with respect to past Giglio-related determinations is justiciable. Because we reject those due process claims on the merits, and because Roe's due process claims for relief going forward as to any potential future, adverse Giglio-related determinations rely on the same legal theory, we need not reach whether those prospective claims are justiciable as he cannot state a claim for relief in any event. See In re Fidelity ERISA Fee Litig., 990 F.3d 50, 60 (1st Cir. 2021).

- 10 -

Before the plaintiff can state a claim for procedural due process protections, he must first state that he has been deprived of some protected liberty or property interest. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972). Roe has not stated a claim that he has been deprived of any such interest, for several different reasons.

Roe does not have a protected liberty or property interest in the prosecutor's charging decisions, decisions regarding what materials are disclosed to criminal defendants during discovery, or decisions as to who to call to testify at trial. All of these decisions involve the prosecutor's discretionary judgment and independence, which are protected from interference. See Harrington v. Almy, 977 F.2d 37, 40-42 (1st Cir. 1992). Roe cannot have a protected interest in something that government officials can grant or deny in their discretion. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 763-64 (2005). And discouraging broad disclosure is contrary to the Supreme Court's recognition that a prudent prosecutor should err in favor of disclosure under Brady and Giglio. See Kyles v. Whitley, 514 U.S. 419, 439-40 (1995).

The parties agree that a public employee may under certain circumstances have a protected property interest in continued employment. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985); Clukey v. Town of Camden, 717 F.3d

- 11 -

52, 56 (1st Cir. 2013). But Roe's assertion fails in any event for a different reason: Lynch was not his employer and she did not make the decision to terminate his employment -- the Town Manager did.

Roe also cannot establish a due process violation through a "stigma plus" claim. See Siegert v. Gilley, 500 U.S. 226, 234 (1991); URI Student Senate v. Town of Narragansett, 631 F.3d 1, 9-10 (1st Cir. 2011). To state such a claim, the plaintiff must show that the alleged stigma from the government actor's conduct has had an adverse effect on some other protected interest "more tangible" than the plaintiff's mere reputation. URI Student Senate, 631 F.3d at 9 (quoting Paul v. Davis, 424 U.S. 693, 701 (1976)). "Where the stigma and the incremental harm -- the 'plus' factor -- derive from distinct sources, a party cannot make out a viable procedural due process claim . . . even if both sources are government entities." Id. at 10; see also Hawkins v. R.I. Lottery Comm'n, 238 F.3d 112, 115-16 (1st Cir. 2001). The termination decision was made by a different governmental actor than Lynch.[4] See Siegert, 500 U.S. at 227-29, 234 (holding that the plaintiff

_____

[4] The Ninth Circuit in Espinosa v. Whitaker, 747 F. App'x 598 (9th Cir. 2019) (unpublished), also held that a Giglio-related determination did not establish a "stigma plus" claim where the government entity that issued the determination was not the plaintiff's employer and so any damage to his reputation was not caused "in the course of terminating his employment." Id. at 599.

failed to state a "stigma plus" due process claim where "[t]he alleged defamation was not uttered incident to the termination of [the plaintiff]'s employment [with a federal] hospital" but was made in a letter of reference to a different federal employer several weeks later); Hawkins, 238 F.3d at 115-16.

## III.

We affirm the district court's dismissal of Roe's complaint.

**-Concurring Opinion Follows-**

**Lipez, <u>Circuit Judge</u>, concurring.** I agree with my colleagues that appellant's due process claim against District Attorney Lynch fails. I write separately because I believe it is important to acknowledge the high stakes in a case such as this for all of the parties. A prosecutor's determination that a police officer is generally <u>Brady</u>- or <u>Giglio</u>-impaired has serious consequences for the police officer's reputation and employment. That determination -- which effectively renders an officer unable to testify not only in a particular case, but also in future cases -- will likely, at a minimum, result in loss of the officer's duties as an investigator and, as here, may lead to the termination of employment. The potential for abuse also exists. As one observer has noted, the prosecutor's power to make such a general-purpose determination provides "potential for police management to misuse <u>Brady</u> [or <u>Giglio</u>] in clashes with police labor," with prosecutors able to "us[e] the <u>Brady</u> designation to aid police chiefs in punishing disfavored officers." Jonathan Abel, <u>Brady's Blind Spot: Impeachment Evidence in Police Personnel Files and the Battle Splitting the Prosecution Team</u>, 67 Stan. L. Rev. 743, 781-82 (2015). I am not suggesting that such misuse occurred here. My point is that the potential for misuse highlights the need for due process protections for police officers affected by <u>Brady</u>- and <u>Giglio</u>-determinations.

However, despite the importance of the police officer's interest, a lawsuit like this one -- a federal suit brought against a state prosecutor -- faces doctrinal obstacles. In addition to the merits issues identified by my colleagues, a federal suit challenging a prosecutor's Brady- or Giglio-determination might falter on immunity and related equitable grounds, as we recognized in Harrington v. Almy, 977 F.2d 37 (1st Cir. 1992). There, we concluded that a state prosecutor's "individualized judgment regarding whether the presence of a particular policeman as investigating officer or otherwise as a witness would burden or compromise the prosecution's cases" might be "wrongheaded," but that judgment is ultimately "the prosecutor's to make free from damage actions or injunctive oversight in the federal court." Id. at 42.

If Roe's complaint had included allegations against his employer, however, his due process claim might have been strengthened.[5] Indeed, some courts have entertained due process claims against the officer's employer on the theory that the loss of a job can qualify as a deprivation of a protected property interest and thereby trigger the obligation to provide the officer

_____

[5] To be clear, I am not suggesting a strategic misstep by Roe or his counsel in choosing to pursue this action only against the District Attorney. It is possible that Roe reached a separate resolution or settlement with his employer (i.e., the Town and/or Town Manager).

with an opportunity to probe the prosecutor's general Giglio-impairment decision. See, e.g., Stockdale v. Helper, No. 3:17-cv-0241, 2017 WL 3503243, at *5-6 (M.D. Tenn. Aug. 16, 2017); see also Abel, supra, at 785 (noting that some officers' litigation "targets the employment consequences of the Brady designation, rather than the Brady designation itself").

Recognizing the competing interests at stake, at least two states have adopted laws or procedures that provide protection against the impact of a Brady- or Giglio-determination while still guaranteeing prosecutors' freedom to comply with their important disclosure obligations. For example, a California statute mandates that an adverse employment action "shall not be undertaken by any public agency against any public safety officer solely because that officer's name has been placed on a Brady list, or [because] the officer's name may otherwise be subject to disclosure pursuant to Brady v. Maryland." Cal. Gov't Code § 3305.5.

In New Jersey, the Attorney General's Office discourages general-purpose Brady- or Giglio-determinations and allows police officers to seek review of a prosecutor's determination from the prosecutor or the Office of the Attorney General. See New Jersey Attorney General Law Enforcement Directive No. 2019-6 at 8-9 (Dec. 4, 2019), www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2019-6.pdf. Importantly, the New Jersey directive makes clear that such review "shall not interrupt or interfere with the

- 16 -

prosecutor's obligation to disclose information in the ongoing case." Id. at 8.

Additionally, as we recognized in Harrington, Maine itself "provides a highly specific mechanism to evaluate a prosecutor's work," permitting "a judicial proceeding to be commenced against a District Attorney, upon complaint by the Attorney General, to determine whether the District Attorney is 'performing the duties of office faithfully and efficiently' and to remove him if he is not." 977 F.2d at 42 (quoting Me. Stat. tit. 30-A, § 257). While this procedure is not limited to the Brady or Giglio context, we suggested that an unjustifiable decision by a prosecutor not to prosecute a particular officer's cases could "amount[] to a performance less than faithful to the office." Id.

Again, I am not suggesting that there is any basis for such a proceeding here. And I am not endorsing the ultimate wisdom or viability of any of the judicial, legislative, and executive approaches I have described. I simply note that there are potential ways to reconcile defendants' Brady and Giglio rights with police officers' due process rights.[6] Those possibilities merit attention.

---

[6] I also express no judgment on what specific kind of "process" -- hearings or the like -- might be "due" to a police officer in this context. The Supreme Court has repeatedly stressed that due process is "flexible" and "calls for such procedural protections

as the particular situation demands."  Jennings v. Rodriguez, 138 S. Ct. 830, 852 (2018) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).