# United States Court of Appeals
## For the First Circuit

No. 22-1483

JOEL DOUGLAS; STEVEN FOWLER; JAMES LEWIS,

Plaintiffs, Appellants,

v.

DAVID HIRSHON; LOSU LLC,

Defendants, Appellees,

BIRCH POINT STORAGE LLC; SCOTT LALUMIERE; MICHAEL LYDEN; SHAWN
LYDEN; RUSSELL OAKES; WAYNE LEWIS; ANDRE BELLUCCI; DAVID JONES;
ROBERT BURGESS; ANDROSCOGGIN SAVINGS BANK; BANGOR SAVINGS BANK;
CAMDEN NATIONAL BANK; DAVID CLARKE; MILK STREET CAPITAL LLC;
MECAP, LLC, d/b/a Milk Street Capital LLC; COASTAL REALTY
CAPITAL, LLC, d/b/a Maine Capital Group, LLC; MAINE CAPITAL
GROUP, LLC; LH HOUSING, LLC; TTJR, LLC; F.O. BAILEY REAL ESTATE;
BLR CAPITAL, LLC; ERIC HOLSAPPLE; MACHIAS SAVINGS BANK; JOHN DOE
NUMBER I; JOHN DOE NUMBER II; JOHN DOE NUMBER III; JOHN DOE
NUMBER IV,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Gelpí, Lynch, and Thompson,
Circuit Judges.

Robert C. Andrews for appellants.
Marshall J. Tinkle, with whom Thompson, MacColl & Bass, LLC,

P.A. was on brief, for appellees.

March 21, 2023

**LYNCH**, **Circuit Judge**. Joel Douglas, Steven Fowler, and James Lewis sued twenty-six defendants, alleging several interrelated schemes to defraud the plaintiffs of real estate in Maine. Among other claims, the complaint asserts that, in connection with these schemes, a subset of the defendants participated in a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, and that this conspiracy injured the plaintiffs.

The district court dismissed the RICO conspiracy claim against two of the defendants, David Hirshon and LOSU, LLC ("LOSU"), and denied a motion from the plaintiffs seeking limited discovery from Hirshon. See Douglas v. Lalumiere, No. 20-cv-00227, 2021 WL 4470399, at *4-5 (D. Me. Sept. 29, 2021). The plaintiffs appeal, contending that the district court erred in (1) concluding that the complaint fails to state a RICO claim against Hirshon and LOSU, (2) declining to consider certain materials outside the complaint in ruling on the motion to dismiss, and (3) denying the plaintiffs discovery. We find no error and affirm the district court's well-reasoned decision.

I.

Because this appeal follows a dismissal for failure to state a claim, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Roe v. Lynch, 997 F.3d 80, 82 (1st Cir.

2021) (quoting Lee v. Conagra Brands, Inc., 958 F.3d 70, 74 (1st Cir. 2020)).

The plaintiffs filed the original complaint in this action, which included thirteen counts against twenty-four defendants, on June 24, 2020, in the U.S. District Court for the District of Maine. Neither Hirshon nor LOSU was named in this complaint. The plaintiffs filed the operative amended complaint ("the complaint") on September 15, 2020. In addition to adding new allegations, claims, and exhibits, this amended pleading introduced Hirshon and LOSU as defendants on two counts: Count IV (a RICO conspiracy claim) and Count XVII (a state law unjust enrichment claim).[1] The RICO claim alleges that Hirshon, LOSU, and other defendants conspired to violate 18 U.S.C. § 1962(a) by investing funds obtained through alleged fraud schemes into efforts to defraud additional victims. The unjust enrichment claim asserts that Hirshon, LOSU, and other defendants unjustly benefited by defrauding Douglas and Fowler.

The complaint alleges three interrelated fraudulent schemes to deprive the plaintiffs and others of real estate in

---

[1] The complaint does not actually list LOSU among the defendants for Count IV, but the allegations included in support of the claim do refer to LOSU. The district court construed the complaint as seeking to bring a claim against LOSU, see Douglas, 2021 WL 4470399, at *3 n.3, and, in the interest of completeness, we do so as well.

- 4 -

Maine.[2]  At least the first two of these schemes were allegedly spearheaded by defendant Scott Lalumiere.

As the district court summarized, in the first alleged scheme,

> Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including [p]laintiffs [Douglas and Fowler], who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements.  Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option.  The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

Douglas, 2021 WL 4470399, at *1.  Properties allegedly targeted in this scheme include 75 Queen Street, Gorham, and 661 Allen Avenue, Portland, at the time owned by plaintiffs Douglas and Fowler, respectively, as well as 36 Settler Road, South Portland, then owned by a nonplaintiff, Christina Davis.  The complaint asserts that the participants in this scheme repeatedly used the mail or wires to facilitate the fraud.

In the second alleged scheme, Fowler agreed with Lalumiere that Fowler would perform renovations at several

---

[2]    In characterizing the complaint's allegations, we do not express any view as to whether the complaint states a claim against any defendant other than Hirshon or LOSU.

- 5 -

properties at a discounted rate and in exchange be given the option to purchase the properties after completing the work and the authority to rent out the properties in the meantime. Lalumiere then defaulted on the properties' mortgages, preventing Fowler from exercising his purchase option.

In the third alleged scheme, multiple defendants agreed to pay off a defaulted mortgage on a property owned by Lewis and to lend him funds for improvements in exchange for his transferring the title to the property to a corporation and making certain payments. Following the title transfer, those defendants refused to make the promised loans and foreclosed on the property.

The complaint's description of these schemes says very little about Hirshon or LOSU. Indeed, in their principal brief, the plaintiffs describe as "accurate[]" the district court's statement that "[t]he [c]omplaint contains scant details regarding Hirshon's and LOSU's participation in Lalumiere's schemes." Id. at *2. The complaint alleges that Hirshon "is a person residing in Freeport[,] Maine," and LOSU "is a Maine corporation doing business in the State of Maine," but does not otherwise provide any background information on Hirshon or LOSU. For instance, the complaint does not even identify Hirshon's occupation or LOSU's line of business. With respect to the RICO count, the complaint alleges that Hirshon and LOSU "knew about the fraud committed by the [RICO e]nterprise because of their participation in the

transactions for 661 Allen Avenue and 75 Queen Street," and that they, alongside other defendants, "realized the proceeds" of the schemes. In addition, the complaint includes as an attachment an affidavit dated January 27, 2020, sworn out by Davis (the nonplaintiff victim of the alleged fraud involving 36 Settler Road) and recorded with the county registry of deeds, regarding the transactions involving 36 Settler Road. In the affidavit, Davis states "[o]n information and belief" that, after Davis entered a lease/buy-back agreement with a Lalumiere-controlled corporation in 2012, the corporation granted a mortgage on the property to LOSU in March 2019, and that "LOSU . . . had actual notice" of Davis's lease/buy-back agreement when it accepted the mortgage. Outside of these statements, the complaint does not describe the nature, timing, or extent of Hirshon's or LOSU's alleged participation in the schemes.[3]

Various subgroups of defendants filed separate motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Hirshon and LOSU jointly filed such a motion on November 23, 2020, arguing, inter alia, that the

---

[3] A paragraph supporting the unjust enrichment claim alleges: "LOSU[,] . . . Hirshon, . . . and [other defendants] extraction [sic] of equity from the homes at 661 Allen Avenue and 57 [sic] Queen Street when . . . Douglas and . . . Fowler paid the underlying obligations on the property unjustly enriched the organization . . . ." On appeal, the plaintiffs do not cite this allegation or argue that it clarifies Hirshon's or LOSU's alleged participation in the schemes for purposes of the RICO claim.

- 7 -

complaint fails to plausibly allege that they knowingly joined any RICO conspiracy or that they received any benefit from the plaintiffs, as necessary to state an unjust enrichment claim.

The plaintiffs filed a memorandum in opposition to the motion to dismiss that relied heavily on a set of attached documents not referenced in or attached to the complaint. They never moved to amend the complaint to incorporate these documents. On the same day, the plaintiffs also filed a motion seeking limited discovery from Hirshon before the court ruled on the motion to dismiss, asserting that such discovery would allow them to cure any deficiencies in their pleading. Hirshon opposed this motion.[4]

The district court granted the motion to dismiss and denied the motion for limited discovery in a written opinion issued September 29, 2021. See Douglas, 2021 WL 4470399, at *4-5. It reasoned that the complaint fails to plausibly allege either that Hirshon or LOSU knowingly joined a RICO conspiracy or that the plaintiffs conferred any benefit on Hirshon or LOSU, as necessary to state a claim for unjust enrichment under Maine law. See id. at *3-4, *4 n.5. The court also concluded that the complaint's

---

[4] A magistrate judge denied the discovery motion without prejudice and recommended that the district court consider it alongside the motion to dismiss. After further briefing on the issue from both sides, the district court construed the magistrate judge's order denying the motion as "a deferral of action on the motion," and addressed the merits of the discovery and dismissal motions together. Douglas, 2021 WL 4470399, at *1 n.2.

- 8 -

allegations fall too far short of the plausibility and particularity requirements of Rules 8 and 9(b) to justify any discovery under this court's precedents. See id. at *5.

Hirshon and LOSU then moved for final judgment on the plaintiffs' claims against them under Rule 54(b). The district court granted the motion,[5] see Douglas v. Lalumiere, No. 20-cv-00227, 2022 WL 2047698, at *3 (D. Me. June 7, 2022), and this timely appeal followed.

## II.

The plaintiffs argue that the district court erred in (1) holding that the complaint fails to plausibly allege that Hirshon or LOSU knowingly joined a RICO conspiracy, (2) declining to consider documents outside the complaint in ruling on the motion to dismiss the RICO claim, and (3) denying the motion for limited discovery with respect to the RICO allegations.[6] We address, and reject, each argument in turn.

---

[5] The plaintiffs opposed the motion for final judgment, but on appeal they do not mount any challenge to the district court's decision to grant the motion independent of their challenges to its decision to deny discovery and dismiss their claims.

[6] The plaintiffs do not address their unjust enrichment claim on appeal, thereby waiving any argument with respect to that count. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 9 -

A.

We review a district court's grant of a motion to dismiss for failure to state a claim de novo. E.g., Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29, 34 (1st Cir. 2022). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "[w]e 'accept as true the complaint's well-pleaded factual allegations' and 'draw all reasonable inferences in favor of the non-moving party,'" Cheng v. Neumann, 51 F.4th 438, 443 (1st Cir. 2022) (quoting McKee v. Cosby, 874 F.3d 54, 59 (1st Cir. 2017)), we do not credit "'conclusory legal allegations' [or] factual allegations that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" Legal Sea Foods, 36 F.4th at 33 (citation omitted) (first quoting Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015); and then quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).[7]

_____

[7] The district court reasoned that, because the plaintiffs' RICO claims are based on alleged predicate acts of

The criminal RICO statute, 18 U.S.C. § 1962, "prohibits certain conduct involving a 'pattern of racketeering activity.'" Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006) (quoting 18 U.S.C. § 1962). Racketeering activity is defined "to include a host of so-called predicate acts," including acts that would be indictable as mail or wire fraud. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008); see 18 U.S.C. § 1961(1) (defining "racketeering activity"); id. §§ 1341, 1343 (defining mail and wire fraud). Subsection (a) of § 1962 provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). Subsection (d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a)." Id. § 1962(d). In order "[t]o prove a RICO conspiracy . . . , the [plaintiff] must show that 'the defendant

---

mail and wire fraud, their complaint "must [also] satisfy the [heightened] particularity requirements of Rule 9(b)." Douglas, 2021 WL 4470399, at *3 (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997)). Under that standard, the complaint "must state the time, place and content of the alleged mail and wire communications perpetrating that fraud." Ahmed, 118 F.3d at 889. Because the complaint fails to meet even the ordinary plausibility standard, we need not separately address issues related to Rule 9.

knowingly joined the conspiracy, agreeing with one or more coconspirators to further [the] endeavor, which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" United States v. Velazquez-Fontanez, 6 F.4th 205, 212 (1st Cir. 2021) (third and fourth alterations in original) (internal quotation marks omitted) (quoting United States v. Rodríguez-Torres, 939 F.3d 16, 23 (1st Cir. 2019)).  The RICO statute's civil component, 18 U.S.C. § 1964, provides a cause of action to "[a]ny person injured in his business or property by reason of a violation of [the criminal RICO provisions]."  18 U.S.C. § 1964(c).

Count IV of the complaint asserts that Hirshon and LOSU, together with numerous other defendants, participated in a RICO conspiracy to violate § 1962(a) by investing funds obtained through the alleged fraud schemes into efforts to defraud additional victims.  To state a claim on this count with respect to Hirshon and LOSU, the complaint must plausibly allege, among other things, that they knowingly joined the purported RICO conspiracy.  See Velazquez-Fontanez, 6 F.4th at 212.  We agree with the district court that the complaint fails to do so.

As the district court observed, the complaint "contains scant details regarding Hirshon's and LOSU's participation" in the alleged conspiracy.  Douglas, 2021 WL 4470399, at *2.  On appeal, the plaintiffs direct our attention essentially to three

- 12 -

statements in the complaint or its exhibits.  First, in a paragraph describing the alleged "role[s]" of various defendants in the purported conspiracy, the complaint states that "LOSU LLC, David Hirshon, [and other defendants] realized the proceeds [of the real estate transactions]."  Second, the complaint states that Hirshon and LOSU "knew about the fraud committed by the [RICO e]nterprise because of their participation in the transactions for 661 Allen Avenue and 75 Queen Street."  Third, the Davis affidavit attached to the complaint states "[o]n information and belief" that a corporation controlled by Lalumiere granted a mortgage on the property at 36 Settler Road to LOSU in March 2019 and that "LOSU . . . had actual notice" of Davis's lease/buy-back agreement with that corporation at that time.

The conclusory assertion that Hirshon and LOSU "knew about the fraud . . . because of their participation in the transactions for 661 Allen Avenue and 75 Queen Street" is "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." Legal Sea Foods, 36 F.4th at 33 (quoting Tambone, 597 F.3d at 442).  The complaint alleges a complex series of transactions, many of which -- such as a titleholder's taking out a mortgage on a property -- are unremarkable.  No inference can reasonably be drawn from the mere

- 13 -

fact of these transactions that those involved knowingly participated in fraud.[8]

Stripping out this conclusory statement, the remaining allegations against Hirshon and LOSU assert that they in some unspecified way participated in transactions involving 661 Allen Avenue and 75 Queen Street; that they in some unspecified way benefitted financially from Lalumiere's transactions; and that LOSU acquired a mortgage on a different property, 36 Settler Road, from a corporation controlled by Lalumiere while having notice that the corporation had entered into a lease/buy-back agreement with Davis. These sparse allegations fall well short of "plausibly narrat[ing] a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). We cannot "draw [a] reasonable inference that the defendant[s are] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. None of the allegations is remotely inconsistent with the conclusion that Hirshon and LOSU are ordinary lenders or providers of services

---

[8] The plaintiffs contend that it was sufficient for them simply to allege knowledge on the part of Hirshon and LOSU without supporting facts because Rule 9 allows plaintiffs to plead "knowledge . . . generally." But the Supreme Court has made clear that "'generally' is a relative term," and that, "[i]n the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake." Iqbal, 556 U.S. at 686 (quoting Fed. R. Civ. P. 9(b)). It "excuses a party from pleading [knowledge] under an elevated pleading standard," but it does not allow a party to rest on conclusory allegations that do not satisfy the basic plausibility standard. Id.; see id. at 686-87; Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2012).

related to real estate transactions that operate in the area of Maine where the alleged fraud took place. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). The plaintiffs have not met this standard.

Because the plaintiffs' allegations do not support a reasonable inference that Hirshon or LOSU knowingly joined the alleged RICO conspiracy, the district court properly concluded that the complaint fails to state a claim against these defendants.

B.

The plaintiffs argue that, even if the complaint itself fails to state a claim, the district court erred by refusing, when ruling on Hirshon and LOSU's motion to dismiss, to consider additional documents attached to the plaintiffs' memorandum opposing the motion. They contend that these attachments -- which were not attached to or referenced in the complaint, and which include, for example, mortgage documents related to the properties involved in the alleged fraud schemes, ostensibly retrieved from county registries of deeds -- fill any gaps in the complaint's allegations. The district court refused to consider these documents because they were not included in the plaintiffs' complaint. Douglas, 2021 WL 4470399, at *4.

In ruling on a motion to dismiss for failure to state a claim, "a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto, or else convert the motion into one for summary judgment."[9] Freeman v. Town of Hudson, 714 F.3d 29, 35-36 (1st Cir. 2013) (citation omitted). "Under certain 'narrow exceptions'" -- including for "documents the authenticity of which are not disputed by the parties" and "official public records" -- "some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." Id. at 36 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). The plaintiffs argue that the attachments to their memorandum opposing the motion to dismiss fall into these "narrow exceptions."

This court has not decided the standard of review applicable to a district court's refusal to consider documents external to a complaint in ruling on a Rule 12(b)(6) motion, see id. at 36 n.5 (declining to decide whether review is de novo or for abuse of discretion); Lab. Rels. Div. of Constr. Indus. of Mass., Inc. v. Healey, 844 F.3d 318, 331 (1st Cir. 2016) (same), but the plaintiffs concede that an abuse of discretion standard applies, so we proceed on that assumption, cf. Davis v. HSBC Bank

---

[9] The plaintiffs do not argue that the district court should have converted the motion into one for summary judgment in order to consider the attachments.

Nev., N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) (holding that a "district court's decision to incorporate by reference documents into [a] complaint shall be reviewed for an abuse of discretion"). We note also that the plaintiffs do not develop any argument or cite any authority holding that considering external documents is mandatory -- rather than within the district court's discretion -- if those documents fall into one of the "narrow exceptions" the plaintiffs invoke. Cf., e.g., Healey, 844 F.3d at 331 (explaining that a court "may" consider external documents within the exceptions); Freeman, 714 F.3d at 36 (same); cf. also Davis, 691 F.3d at 1159 ("Our relevant case law has recognized consistently that [a] district court may, but is not required to incorporate documents by reference.").

We see no abuse of discretion in the district court's refusal to consider the attachments. The plaintiffs did not articulate to the district court any reason why it could or should consider the attachments in ruling on the motion to dismiss. Cf. Diulus v. Am. Express Travel Related Servs. Co., 823 F. App'x 843, 847 (11th Cir. 2020) (unpublished decision) (finding no abuse of discretion where district court did not take judicial notice of materials sua sponte); River Farm Realty Tr. v. Farm Fam. Cas. Ins. Co., 943 F.3d 27, 41 n.21 (1st Cir. 2019) (treating argument not made to district court as waived). The plaintiffs do not dispute Hirshon and LOSU's observation that, in litigating the

motion before the district court, they did not cite the exceptions on which they now rely. Their opposition memorandum simply noted that various exhibits were attached, and cited those attachments without any discussion of why doing so would be permissible.[10] Precedent emphasizes that the exceptions the plaintiffs seek to invoke are "narrow," and the district court did not abuse its discretion by declining to maneuver the attachments into those exceptions without assistance from the plaintiffs. Freeman, 714 F.3d at 36 (quoting Watterson, 987 F.2d at 3); see id. at 37 (treating as waived any argument that a document fit into the "narrow exceptions" because the party advancing the document failed to make such an argument).

Further, the plaintiffs have offered no persuasive reason why the attachments could not have been submitted with the complaint or included in a proposed amended complaint. See Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 483 (6th Cir. 2020) ("If plaintiffs believe that they need to supplement their complaint with additional facts to withstand . . . a motion to

_____

[10]     The district court heard oral argument on the motion to dismiss; the record does not contain any transcript of this argument, but the plaintiffs do not claim to have raised the exceptions they now invoke during that proceeding. The plaintiffs did assert in a footnote in their memorandum opposing Hirshon and LOSU's motion for final judgment that the district court could have considered one of the attachments as a public record. But this memorandum was filed after the district court ruled on the motion to dismiss, and the plaintiffs did not move the district court to reconsider the dismissal.

dismiss[], they have a readily available tool: a motion to amend the complaint under Rule 15."); Zomolosky v. Kullman, 640 F. App'x 212, 218 n.2 (3d Cir. 2016) (unpublished decision) (finding no abuse of discretion where district court declined to take judicial notice of SEC filings that plaintiff had been "free to include" in complaint). The plaintiffs respond that "[t]he [complaint] was lengthy and already had numerous attachments without trying to anticipate how it might be defended." But while a complaint need not anticipate every possible defense a defendant might raise, see, e.g., Jones v. Bock, 549 U.S. 199, 211-12 (2007), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" as to each defendant, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The district court merely held the plaintiffs to that burden, and we follow its lead. See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (explaining that, in reviewing a dismissal under Rule 12(b)(6), this court "review[s] only those documents actually considered by the district court . . . unless we are persuaded that [the district court] erred in declining to consider the proffered documents").

C.

In the end, this appeal turns on whether the district court abused its discretion by denying "limited discovery" against Hirshon before dismissing the plaintiffs' claims. This court has

identified two circumstances in which a district court considering a motion to dismiss under Rule 12(b)(6) might appropriately permit limited discovery.  This case does not fall into either category.

First, a line of cases beginning with New England Data Services, Inc. v. Becher, 829 F.2d 286 (1st Cir. 1987), recognizes that, where a complaint "specifically set[s] out a general scheme to defraud" but (1) the complaint falls short of pleading a claim with the heightened particularity required by Rule 9(b) and (2) the missing information is "peculiarly within [the] defendants' knowledge," a district court may have discretion to allow the plaintiffs limited discovery to uncover the missing details.  Id. at 292; see id. at 290-92.  In Becher, for example, the complaint, which alleged a RICO claim based on predicate acts of mail and wire fraud, was deficient only because it did not set forth in detail the "time, place[,] and content" of the underlying mailings or wirings.  Id. at 291; see id. at 290-92; see also N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 43-44 (1st Cir. 2001) (discussing Becher).  This court has never applied Becher in a case, like this one, where the complaint fell short not only of Rule 9(b)'s heightened particularity requirements but also of the ordinary plausibility standard.  See Home Orthopedics Corp. v. Rodríguez, 781 F.3d 521, 532 (1st Cir. 2015) (rejecting application of Becher where complaint did not meet plausibility standard); Boldt, 274 F.3d at 43-44 (similar).  Because "it is not simply the

- 20 -

details [the plaintiffs] lack, but the substance of a RICO claim," Boldt, 274 F.3d at 44, Becher discovery is unwarranted.

Second, this court held in Menard v. CSX Transportation, Inc., 698 F.3d 40 (1st Cir. 2012), that limited discovery may be appropriate where "a plausible claim may be indicated [by the plaintiff's allegations,] . . . 'information needed [to flesh out the allegations before trial] may be in the control of [the] defendants,'" and "modest discovery may provide the missing link." Id. at 45 (third alteration in original) (quoting Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012)). The plaintiff in Menard alleged that he had been injured twice while trespassing in a railyard operated by the defendant -- first by having his foot crushed by a moving segment of track, then by being hit by a train -- and that the defendant's employees had failed to prevent the second injury despite being aware of the first. See id. at 41-42, 44. This court explained that, although the plaintiff had not provided detailed allegations about the defendant's employees' activities, "one might not expect precise recollection from a man badly injured by a switched track and shortly thereafter hit and dragged under [a] train." Id. at 45. Critically, the plaintiff had made general allegations about those employees on "information and belief" and described his own actions, and the defendant was better positioned to supply the missing information than was the plaintiff. Id. at 41-42, 44-45.

Later cases have read Menard as indicating that "'some latitude may be appropriate' in applying the plausibility standard" and authorizing discovery where "a material part of the information needed is likely to be within the defendant's control," and that "the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case." García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013) (quoting Menard, 698 F.3d at 45); accord Saldivar v. Racine, 818 F.3d 14, 23 (1st Cir. 2016).

The complaint in this case falls well short of justifying discovery under Menard. As explained above, the complaint does not come close to plausibly alleging that Hirshon or LOSU knowingly joined a RICO conspiracy. It supplies virtually no information about the nature, timing, or extent of their alleged participation in the conspiracy. Nor does the complaint give shape to its claims through allegations made on information and belief, as in Menard. See 698 F.3d at 44-45; see also Saldivar, 818 F.3d at 23 (discussing Menard). Given the near-total lack of information, we cannot say that "a plausible claim may be indicated" by the complaint or that there is information likely to be under the defendants' control that would "provide the missing link." Menard, 698 F.3d at 45. As the district court correctly concluded, there is simply too wide a "gap between the allegations in the complaint

and a plausible claim" for discovery to be appropriate. Saldivar, 818 F.3d at 23.

We reject the plaintiffs' contention that, in considering the motion for limited discovery, the district court should have looked beyond the complaint and considered the attachments to the memorandum opposing the motion to dismiss. Cases following both Becher and Menard have focused specifically on the allegations contained in the complaint (or a proposed amended complaint). See, e.g., Boldt, 274 F.3d at 44 (examining "allegations" in "complaint" in holding Becher discovery unwarranted); Becher, 829 F.2d at 292 (focusing on "the strength of [the] plaintiff's allegations" in the complaint); Parker v. Landry, 935 F.3d 9, 18-19 (1st Cir. 2019) (citing Menard, 698 F.3d at 45) (assessing whether allegations in proposed amended complaint were sufficiently plausible to permit discovery); García-Catalán, 734 F.3d at 104-05 (examining "what the [plaintiff] . . . set forth in her complaint" when applying Menard). This focus makes good sense, as both Becher and Menard concerned the plaintiff's compliance with pleading requirements. See Becher, 829 F.2d at 292 (examining compliance with Rule 9(b)); Menard, 698 F.3d at 45 (examining compliance with plausibility standard). Nor does this approach impose an unreasonable burden on the plaintiffs, who were free to seek to amend their complaint to include the attachments but failed to do so. Cf. Bates, 958

F.3d at 483 (explaining that a plaintiff can "readily" supplement a complaint through a motion to amend). The district court properly considered the material before it with respect to the motion to dismiss when ruling on the plaintiffs' discovery motion.

We also reject the plaintiffs' argument that a plaintiff confronted with a Rule 12(b)(6) motion is entitled to discovery unless the record shows that "there is no means of pleading the claim well." On the contrary, this court has emphasized that the burden is on the plaintiff to "allege[] 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of [an] actionable [claim]." Parker, 935 F.3d at 18 (second alteration in original) (quoting Twombly, 550 U.S. at 556); see also Boldt, 274 F.3d at 44 (explaining that Becher discovery is appropriate only where the complaint's allegations "render[] it likely" that discovery would uncover necessary details). This burden reflects the fact that "[o]ne of the main goals of the plausibility standard is the avoidance of unnecessary discovery." Ríos-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 26 (1st Cir. 2019) (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 46 (1st Cir. 2012)); see Schatz, 669 F.3d at 56. The plaintiffs' approach would undermine that goal by requiring discovery in a broad set of cases where the pleadings offer no reason to think discovery is worthwhile.

The district court properly denied the plaintiffs' motion for limited discovery.

III.

For the foregoing reasons, we affirm.